Filed 5/19/14

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
      Plaintiff and Appellant, )
) S211670
      v. )
) Ct.App. 6 H037923
JAMES RUSSELL SCOTT, )
) Monterey County
      Defendant and Respondent. ) Super. Ct. No. SS080912
_____ )

In 2011, the Legislature enacted and amended the 2011 Realignment Legislation addressing public safety (Stats. 2011, ch. 15, § 1; Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 1 (the Realignment Act or the Act). As relevant here, the Realignment Act significantly changes the punishment for some felony convictions. Under the terms of the Act, low-level felony offenders who have neither current nor prior convictions for serious or violent offenses, who are not required to register as sex offenders and who are not subject to an enhancement for multiple felonies involving fraud or embezzlement, no longer serve their sentences in state prison. Instead, such offenders serve their sentences either entirely in county jail or partly in county jail and partly under the mandatory supervision of the county probation officer. (Pen. Code, § 1170, subd. (h)(2), (3), (5).)[1] Felony

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

offenders who are sentenced to county jail may be eligible for a county home detention program in lieu of confinement (§ 1203.016, subd. (a)) and are not subject to parole, which extends only to persons who have served state prison terms. (§ 3000 et seq.) The Legislature provided that the sentencing changes made by the Realignment Act "shall be applied prospectively to any person sentenced on or after October 1, 2011." (§ 1170, subd. (h)(6) (hereafter section 1170(h)(6)).)

A conflict in Court of Appeal decisions has developed regarding the applicability of the Realignment Act to the category of defendants who, prior to October 1, 2011, have had a state prison sentence imposed with execution of the sentence suspended pending successful completion of a term of probation, and who, after October 1, 2011, have their probation revoked and are ordered to serve their previously imposed term of incarceration. (Compare *People v. Clytus* (2012) 209 Cal.App.4th 1001, 1006-1009 (*Clytus*) [the Realignment Act applies, defendant to serve term in county jail] with *People v. Gipson* (2013) 213 Cal.App.4th 1523, 1528-1530 (*Gipson*) [the Realignment Act does not apply, defendant to serve term in state prison].)[2] In this case, the Court of Appeal agreed with the decision in *Clytus* and held that the trial court had properly directed that defendant's sentence should be served in county jail rather than in state prison.

---

[2] There are a number of other published cases that consider this issue. Beside the Court of Appeal in this case, only one other appellate court has agreed with *Clytus*. (*People v. Reece* (2013) 220 Cal.App.4th 204, review granted Jan. 15, 2014, S214573.) All other Courts of Appeal have agreed with *Gipson*. (*People v. Montrose* (2013) 220 Cal.App.4th 1242, 1250; *People v. Moreno* (2013) 218 Cal.App.4th 846, 849-851; *People v. Wilcox* (2013) 217 Cal.App.4th 618, 622-627; *People v. Kelly* (2013) 215 Cal.App.4th 297, 301-306 (*Kelly*); *People v. Mora* (2013) 214 Cal.App.4th 1477, 1481-1482.)

We granted review to resolve the conflict in the Court of Appeal decisions on this issue.

We conclude that the Realignment Act is not applicable to defendants whose state prison sentences were imposed and suspended prior to October 1, 2011. Upon revocation and termination of such a defendant's probation, the trial court ordering execution of the previously imposed sentence must order the sentence to be served in state prison according to the terms of the original sentence, even if the defendant otherwise qualifies for incarceration in county jail under the terms of the Realignment Act. Accordingly, we reverse the Court of Appeal's contrary determination.

## I. BACKGROUND

In May 2009, defendant was charged with transportation or sale of a controlled substance (Health & Saf. Code, § 11352, subd. (a); count 1), possession of cocaine base for sale (Health & Saf. Code, § 11351.5; count 2), possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a); count 3), misdemeanor possession of marijuana while driving (Veh. Code, former § 23222, subd. (b), as amended by Stats. 1998, ch. 384, § 2, p. 2897; count 4), and misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a); count 5). The information alleged that defendant had suffered a prior conviction for possession of a controlled substance, cocaine base, within the meaning of Health and Safety Code section 11370.2, subdivision (a).

Pursuant to a plea bargain, defendant pleaded guilty to count 2 (possession of cocaine base for sale) and admitted the prior conviction on the condition that he be placed on felony probation with a suspended seven-year prison sentence.

In June 2009, the trial court imposed on defendant a seven-year state prison sentence, composed of a four-year middle term for defendant's conviction of possessing cocaine base and a three-year term for the prior conviction

3

enhancement. However, the trial court suspended execution of the seven-year sentence and placed defendant on formal probation for a period of three years. The remaining charges were dismissed pursuant to section 1385.

Defendant's probation was revoked and reinstated on two subsequent occasions. On October 4, 2011, a third petition to revoke probation was filed pursuant to section 1203.2. It alleged defendant had violated his probation by failing to complete a residential drug treatment program. On November 1, 2011, defendant admitted the violation and acknowledged that he faced a seven-year sentence.

On December 13, 2011, the trial court revoked defendant's probation and lifted the suspension of the previously imposed sentence. The court continued the hearing, however, to allow briefing addressing whether defendant should serve the previously imposed but suspended seven-year term of incarceration in state prison or locally in county jail. After briefing and argument, the court ruled that defendant qualified for a local commitment because the court's decision whether to reinstate defendant's probation was "essentially a sentencing proceeding" occurring after October 1, 2011, making the provisions of the Realignment Act applicable under section 1170(h)(6). On December 22, 2011, the trial court ordered the defendant to serve his seven-year term in county jail pursuant to section 1170(h).

On the People's appeal, the Court of Appeal affirmed the trial court's order sentencing defendant to county jail, agreeing with the reasoning of *Clytus*, *supra*, 209 Cal.App.4th 1001 and disagreeing with *Gipson*, *supra*, 213 Cal.App.4th 1523. We granted review.

## II. DISCUSSION

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.

4

[Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.  [Citation.]'  [Citation.]  ' "When the language of a statute is clear, we need go no further."  [Citation.]  But where a statute's terms are unclear or ambiguous, we may "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." '  [Citation.]"  (*People v. Harrison* (2013) 57 Cal.4th 1211, 1221-1222.)

Section 1170(h)(6) provides that "[t]he sentencing changes made by the [Realignment Act] . . . *shall be applied prospectively to any person sentenced on or after October 1, 2011.*"  (Italics added.)  The language we have highlighted appears clear on its face for any felony offender whose punishment is imposed and not suspended, but ordered executed at the same time.  If such a sentence is pronounced before October 1, 2011, the Act does not apply.  However, the meaning of the term "sentenced" in section 1170(h)(6) is potentially ambiguous regarding felony offenders, like defendant in this case, whose state prison terms of incarceration were imposed but execution was suspended pending successful completion of a term of probation prior to October 1, 2011, and who subsequent to October 1, 2011, have their probation revoked and are ordered to serve the previously imposed term of incarceration.  Are such defendants "sentenced," within the meaning of section 1170(h)(6), when the sentence is originally imposed and suspended, or are they "sentenced," for purposes of this statute, when the court subsequently orders execution of the sentence?  There is no definition of "sentenced" in the Realignment Act itself and nothing in the legislative history of

5

the Act indicates how the Legislature intended the Act to be applied in this situation. As we have noted, the Courts of Appeal are divided on the issue.[3]

In *Clytus, supra,* 209 Cal.App.4th 1001, the Court of Appeal held that the Realignment Act applied to a defendant whose probation was revoked and whose previously imposed and suspended sentence was ordered to be executed after October 1, 2011. The court acknowledged that a defendant is "sentenced" when his or her sentence is imposed and suspended, but concluded that the defendant is *also* "sentenced" within the meaning of section 1170(h)(6) when the court orders execution of sentence after October 1, 2011. (*Clytus, supra,* at p. 1007.) According to the *Clytus* court, an order of execution of a previously imposed sentence constitutes sentencing because the decision to revoke probation is discretionary and the court must articulate its reasons for revoking probation and executing the sentence. (*Ibid*.) The *Clytus* court distinguished this court's decision in *People v. Howard* (1997) 16 Cal.4th 1081 (*Howard*), in which we held that a trial court does not have power to modify a previously imposed and suspended sentence when it later revokes probation and orders the sentence executed. (*Clytus*, at p. 1008.) The *Clytus* court concluded *Howard* was inapplicable because *Howard* could not have anticipated realignment and was

---

[3] Defendant contends the important word in section 1170(h)(6) is the word "any" and argues that it broadly reflects a legislative intent to require a county jail sentence in his situation. We focus instead on the term "sentenced" because it provides the relevant limiting language of the statute. If defendant was sentenced on or after October 1, 2011, the changes affected by the Realignment Act apply to him because he is "any" person sentenced on or after that date. On the other hand, if he was sentenced before the operative date, he is not "any person sentenced on or after October 1, 2011." (§ 1170(h)(6).)

concerned only with the length of an individual's sentence rather than the location of incarceration. (*Clytus, supra*, at p. 1008.)

The Court of Appeal in *Gipson*, *supra*, 213 Cal.App.4th 1523, disagreed with *Clytus*, holding instead that "a defendant is sentenced on the date that sentence is first announced and imposed even if execution of the sentence does not happen until a later date." (*Gipson, supra*, at p. 1526.) The *Gipson* court concluded that the word "sentenced" in section 1170(h)(6) "means the time when the trial court first announced and imposed sentence as opposed to the time when the sentence was executed." (*Gipson, supra*, at p. 1529.) The court determined that under *Howard, supra,* 16 Cal.4th at pages 1087-1088, and *People v. Chagolla* (1984) 151 Cal.App.3d 1045, 1049, a defendant who has a sentence imposed and suspended has had a final judgment entered and upon revocation of the suspension of execution of the judgment, the court lacks jurisdiction "to do anything other than order the execution of the previously imposed state prison sentence." (*Gipson, supra*, at pp. 1529-1530.)

The Court of Appeal in *Kelly, supra*, 215 Cal.App.4th 297, agreed with *Gipson.* It observed that "[t]he principles discussed in *Howard* are derived from section 1203.2, subdivision (c)." (*Kelly*, *supra*, at p. 302, citing *Howard, supra,* 16 Cal.4th at pp. 1087-1088.) Subdivision (c) of section 1203.2 provides in part that "[u]pon any revocation and termination of probation the court may, if the sentence has been suspended, pronounce judgment for any time within the longest period for which the person might have been sentenced. *However, if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that the judgment shall be in full force and effect.*" (Italics added.) *Kelly* noted that "California Rules of Court, rule 4.435(b), which implements section 1203.2, subdivision (c), provides that, upon revocation of probation, '(1) If the imposition of sentence was previously suspended, the

7

judge must impose judgment and sentence after considering any findings previously made and hearing and determining the matters enumerated in rule 4.433(c)' or '(2) If the execution of sentence was previously suspended, the judge must order that the judgment previously pronounced be in full force and effect and that the defendant be committed to the custody of the Secretary of the Department of Corrections and Rehabilitation for the term prescribed in that judgment.' " (*Kelly*, *supra*, at p. 302.) *Kelly* repeated our comment in *Howard* that "[t]hese provisions, 'by their terms, limit the court's power in situations in which the court chose to impose sentence but suspended its execution pending a term of probation.' (*Howard*, *supra*, 16 Cal.4th at p. 1088 [discussing § 1203.2, subd. (c) and Cal. Rules of Court, former rule 435, now rule 4.435].)" (*Kelly, supra,* at pp. 302-303.) *Kelly* concluded that the failure of the Legislature to "repeal or amend section 1203.2, subdivision (c)" and the absence of any language in section 1170, subdivision (h) indicating an intent to "abrogate *Howard*" constituted evidence that the Legislature intended the Realignment Act to be applicable only to defendants who have their sentences imposed after October 1, 2011. (*Kelly*, *supra*, at pp. 305-306.)

We agree with *Gipson* and *Kelly* that the statutory provisions and case law existing at the time of the Legislature's enactment of section 1170(h)(6) in 2011 established that a defendant is "sentenced" when a judgment imposing punishment is pronounced even if execution of the sentence is then suspended. A defendant is not sentenced again when the trial court lifts the suspension of the sentence and orders the previously imposed sentence to be executed.

In our 1997 decision in *Howard*, *supra*, 16 Cal.4th 1081, we discussed the distinction between suspending imposition of a sentence and suspending execution of a sentence. We explained that "[w]hen the trial court suspends imposition of sentence, no judgment is then pending against the probationer, who is subject only

8

to the terms and conditions of the probation. [Citations.] The probation order is considered to be a final judgment only for the 'limited purpose of taking an appeal therefrom.' [Citation.] On the defendant's rearrest and revocation of her probation, '. . . the court may, if the sentence has been suspended, pronounce judgment for any time within the longest period for which the person might have been sentenced.' " (*Id.*, at p. 1087.) However, "[u]nlike the situation in which sentencing itself has been deferred, where a sentence has actually been imposed but its execution suspended, 'The revocation of the suspension of execution of the judgment brings the former judgment into full force and effect . . . .' [Citations.]" (*Ibid.*)

We found these principles reflected in section 1203.2, subdivision (c), and former rule 435(b)(2) of the California Rules of Court,[4] which "by their terms, limit the court's power in situations in which the court chose to impose sentence but suspended its execution pending a term of probation." (*Howard*, *supra*, 16 Cal.4th at p. 1088.) We concluded that "[o]n revocation of probation, if the court previously had imposed sentence, the sentencing judge must order *that exact sentence* into effect . . . ." (*Ibid*., italics added.)

Admittedly we did not consider in *Howard* the court's authority under the Realignment Act to change the location of where a defendant is to serve a previously imposed term of incarceration — at the time of *Howard* all felony sentences were to be served in state prison. Nevertheless, *Howard* establishes that when a court elects to impose a sentence, a judgment has been entered and the terms of the sentence have been set even though its execution is suspended

---

**4** Effective in 2001, rule 435 was renumbered as rule 4.435. All further rule references are to the California Rules of Court.

9

pending a term of probation. Contrary to the claim of defendant, a sentence includes more than the length of the term of confinement. (See, e.g., *People v. Garcia* (2006) 147 Cal.App.4th 913, 916-917 [sex offender registration requirement was part of sentence imposed and could not be removed when court ordered sentence executed].)

It is a settled principle of statutory construction that the Legislature " 'is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof. [Citation.]' [Citation.]" (*People v. Yartz* (2005) 37 Cal.4th 529, 538.) Courts may assume, under such circumstances, that the Legislature intended to maintain a consistent body of rules and to adopt the meaning of statutory terms already construed. (*People v. Harrison* (1989) 48 Cal.3d 321, 329; *People v. Wood* (1998) 62 Cal.App.4th 1262, 1270.) Applying this principle here, we conclude that the Legislature intended the term "sentenced" in section 1170(h)(6) to be consistent with *Howard* and section 1203.2, subdivision (c), as implemented by rule 4.435(b)(2).

Defendant contends, however, that the Legislature intended the Realignment Act to apply to his situation because the hearing on June 12, 2009, at which his sentence was imposed and suspended pending his successful completion of probation, and the hearing on December 22, 2011, at which the court considered whether to order defendant to serve his previously imposed term of incarceration locally or in state prison, were both "sentencing hearings." Section 1170(h)(6) does not state that the provisions of the Realignment Act are to be applied in all sentencing hearings held after October 1, 2011, but to all defendants "sentenced" after that date. As we have explained, under established law, a defendant is sentenced when the trial court originally pronounces judgment. Therefore, we need not consider whether the hearing at which a court declines to reinstate

10

probation and instead orders execution of the previously imposed sentence may appropriately be characterized as a sentencing hearing.

We also reject defendant's argument that our construction of the term "sentenced" renders section 1170(h)(6) inconsistent with the Legislature's use of the same term in subdivision (d) of section 1170.  Section 1170, subdivision (d)(1), provides, in pertinent part, that "[w]hen a defendant subject to [section 1170] or subdivision (b) of Section 1168 has been *sentenced* to be imprisoned in the state prison *and* has been *committed* to the custody of the secretary, the court may, within 120 days of the *date of commitment* . . . recall *the sentence and commitment* . . . ."  (Italics added.)  By requiring the defendant to have been both "sentenced" and "committed" before granting the trial court authority to recall the "sentence and commitment," as well as by tying the time limit for the court to exercise that authority to the "date of commitment," section 1170, subdivision (d)(1) evidences the Legislature's recognition and understanding that sentencing may occur separately from commitment to custody, i.e., execution of the sentence.  Our interpretation of section 1170(h)(6) is, therefore, consistent with the Legislature's use of the term "sentenced" in section 1170, subdivision (d).

Defendant claims that the purpose of the Realignment Act "is to reduce the number of defendants sent to prison and redirect resources so that nonviolent felons are to be punished in the county jail and rehabilitated locally."  He argues that a construction of section 1170(h)(6) that requires him to serve his sentence in prison is contrary to the Legislature's intent.  We disagree.

The Legislature's stated purposes concerning the Realignment Act are codified in section 17.5.  (Stats. 2011, ch. 39, § 5.)  Reaffirming its commitment to reducing recidivism, the Legislature, in section 17.5, declares its belief that: "Criminal justice policies that rely on building and operating more prisons to address community safety concerns are not sustainable, and will not result in

11

improved public safety.  [¶]  . . . California must reinvest its criminal justice resources to support community-based corrections programs and evidence-based practices that will achieve improved public safety returns on this state's substantial investment in its criminal justice system.  [¶]  . . . Realigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs, which are strengthened through community-based punishment, evidence-based practices, improved supervision strategies, and enhanced secured capacity, will improve public safety outcomes among adult felons and facilitate their reintegration back into society." (§ 17.5, subd. (a)(3)-(5).)  Despite these findings and declarations, however, the Legislature did not provide that *all* low-level felony offenders must be sentenced or transferred to serve their term of incarceration in local custody.  Instead, the Legislature expressly provided that the sentencing changes made by the Act apply "prospectively to any person sentenced on or after October 1, 2011." (§ 1170(h)(6).)  The provisions of the Act were "not intended to alleviate state prison overcrowding."  (§ 17.5, subd. (b).)

Finally, we reject defendant's argument that if we find section 1170(h)(6) to be ambiguous, we must accept his proposed interpretation of it pursuant to the " 'rule of "lenity," ' " under which courts resolve doubts about the meaning of a statute in a criminal defendant's favor.  (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 312.)" (*People v. Cornett* (2012) 53 Cal.4th 1261, 1271.) We once again note that the rule of lenity applies " ' "only if two reasonable interpretations of the statute stand in relative equipoise."  [Citation.]'  [Citations.]" (*People v. Soria* (2010) 48 Cal.4th 58, 65; accord, *People v. Lee* (2003) 31 Cal.4th 613, 627.)  "The rule 'has no application where, "as here, a court 'can fairly discern a contrary legislative intent.' " ' [Citations.]" (*Cornett*, at p. 1271.)

12

We conclude that the Realignment Act is not applicable to defendants who have had a state prison sentence imposed and suspended prior to October 1, 2011. Therefore, when the trial court decided not to reinstate defendant's probation and to order the previously imposed seven-year sentence to be executed, defendant was not entitled, under section 1170(h)(6), to an order committing him to the county jail. We disapprove *People v. Clytus*, *supra*, 209 Cal.App.4th 1001.

### III. DISPOSITION

The judgment of the Court of Appeal is reversed and the matter is remanded to the Court of Appeal for further proceedings consistent with this opinion.

CANTIL-SAKAUYE, C. J.

WE CONCUR:


BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.
KENNARD, J.*

_____
\* Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Scott

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 216 Cal.App.4th 848
**Rehearing Granted**

_____

**Opinion No.** S211670
**Date Filed:** May 19, 2014

_____

**Court:** Superior
**County:** Monterey
**Judge:** Mark E. Hood

_____

**Counsel:**

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Bridget Billeter, Deputy Attorneys General, for Plaintiff and Appellant.

Dallas Sacher, under appointment by the Supreme Court, and Laura Burgardt, under appointment by the Court of Appeal, for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Bridget Billeter
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-1340

Dallas Sacher
Sixth District Appellate Program
100 N. Winchester Boulevard, Suite 310
Santa Clara, CA  95050
(408) 241-6171