Filed 6/24/15; pub. order 7/17/15 (see end of opn.)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E061733 |
| v. | (Super.Ct.No. BAF1100559) |
| ZACKARIAH WILLIAM BORYNACK, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Becky Dugan, Judge.

Affirmed in part, reversed in part and remanded with directions.

Michael A. Hestrin, District Attorney, and Emily R. Hanks, Deputy District

Attorney, for Plaintiff and Appellant.

Melanie K. Dorian, under appointment by the Court of Appeal, for Defendant and

Respondent.

1

On November 22, 2013, defendant and appellant Zackariah William Borynack

pled guilty to one count of possession of a destructive device (Pen. Code,[1] § 18715, subd.

(a)(1)); 39 counts of possession of a destructive device and explosive (§ 18715, subd.

(a)(3)); one count of possession of substances with the intent to make a destructive device

and explosive without a permit (§ 18720); one count of possession of a zip gun

(§ 33690); and one count of possession of a shuriken (§ 22410). On June 27, 2014, the

trial court sentenced him to two years for possession of a destructive device (§ 18715,

subd. (a)) and concurrent two-year terms on all remaining counts. After applying

defendant's 117 days of custody credits, the court suspended execution of the entire

remaining sentence and placed him on mandatory supervision pursuant to section 1170,

subdivision (h)(5).

On appeal, the People challenge the court's sentence as unlawful (§ 1238, subd.

(a)(10)), contending that while defendant's crimes were subject to local custody

confinement under section 1170, subdivision (h), section 18780 prohibits suspending

execution of his sentence to place him on mandatory supervision. We agree and reverse.

## I. FACTS

On August 7, 2011, when defendant was pulled over for a traffic violation, it was

discovered that he was carrying a homemade explosive in the car's glove compartment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

The device was made from potassium nitrate and sugar and had a fuse to ignite it. Deputy Jeff Lundgren opined this was an Improvised Explosive Device (IED) whose materials burned rapidly. The deputy also discovered in the vehicle a cardboard tube with a fuse, fireworks, and "exploding targets." Defendant admitted he had created the IED, had exploded targets, and that he had additional explosives at his home.

A search of defendant's residence produced a zip gun, an improvised rocket launcher, shurikens, materials used to construct the IEDs, as well as other materials that could be used to make explosives, including metal shavings, firecrackers, and oxidizer. In two nearby locked storage sheds, deputies found grenade bodies, nitro methane, black powder, metal shavings, two .50-caliber armor piercing incendiary projectiles, 20-millimeter training practice tracer rounds and high explosive incendiary rounds.

## II. DISCUSSION

The People contend the trial court erred in finding defendant eligible under the Criminal Justice Realignment Act of 2011 (Realignment Act) to suspend execution of his sentence for the destructive devices and explosives charges in order to place him on mandatory supervision. The People assert that under the provisions of section 18780, the trial court has no authority under section 1170, subdivision (h) to suspend the execution of a sentence for a defendant convicted under the Destructive Devices and Explosives Chapter of the Penal Code. This assertion raises an issue of statutory interpretation, which we review de novo. (*People v. Love* (2005) 132 Cal.App.4th 276, 284.)

3

## A. Principles of Statutory Interpretation

"'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]'" (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 (*Horwich*).) "In determining intent, we look first to the words themselves. [Citations.] When the language is clear and unambiguous, there is no need for construction. [Citations.] When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statue is a part. [Citations.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-1008; see *People v. Verduzco* (2012) 210 Cal.App.4th 1406, 1414.) "'"The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]"'" (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 928.) "'[W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' [Citation.]" (*Horwich*, *supra*, 21 Cal.4th at p. 276.)

## B. Analysis

In 2011, the Legislature enacted the Realignment Act, creating section 1170, subdivision (h), and realigning housing for certain felony convictions from state prison to

4

local custody. [2] Subdivision (h)(5) of section 1170 created the "split sentence" which allows a defendant to serve a realigned sentence partially in local custody and partially on mandatory supervision by the probation department. (§ 1170, subd. (h).) Under this subdivision, mandatory supervision is achieved by suspending execution of the concluding portion of the realigned sentence.

In this case, defendant was convicted of committing offenses proscribed under the Destructive Devices and Explosives Chapter of the Penal Code (§ 18710 et seq.). Both sides agree that defendant's crimes (§§ 18715, 18720) were subject to realignment; however, they disagree on the trial court's discretion to place defendant on mandatory

---

[2] In 2014, when defendant was sentenced, former section 1170, subdivision (h), in relevant part, provided: "(1) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years. [¶] (2) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense. [¶] . . . [¶] (4) Nothing in this subdivision shall be construed to prevent other dispositions authorized by law . . . . [¶] (5) The court, when imposing a sentence pursuant to paragraph (1) or (2) of this subdivision, may commit the defendant to county jail as follows: [¶] . . . [¶] (B)(i) For a term as determined in accordance with the applicable sentencing law, but suspend execution of a concluding portion of the term selected in the court's discretion, during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court. The period of supervision shall be mandatory, and may not be earlier terminated except by court order. . . . [¶] (ii) The portion of a defendant's sentenced term during which time he or she is supervised by the county probation officer pursuant to this subparagraph shall be known as mandatory supervision." (Stats. 2012, ch. 828 (S.B.9), § 1; Stats.2013, ch. 508 (S.B.463), § 5.)

supervision.  According to the People, defendant's crimes are subject to section 18780's prohibition on suspended sentencing.  Section 18780 provides:  "A person convicted of a violation of this chapter shall not be granted probation, and *the execution of the sentence imposed upon that person shall not be suspended by the court*."  (§ 18780, italics added.)  Thus, the People argue that although defendant was subject to a local custody commitment, the trial court was prohibited from suspending execution of that sentence by placing defendant on mandatory supervision.  We agree.

The language in section 18780 is clear and without any ambiguity.  Section 18780's prohibition does not only apply to "traditional" suspended sentences, i.e., suspending execution of a sentence in conjunction with a grant of probation.  Rather, it precludes both a grant of probation *and* suspension of a sentence.  In other words, any suspension of a sentence for a crime defined in the Destructive Devices and Explosives Chapter is prohibited, regardless of whether it is accompanied by a grant of probation.

Although section 1170, subdivision (h) authorizes trial courts to impose mandatory supervision when suspending execution of a concluding portion of a term, the creation of mandatory supervision did not result in the creation of a "'different animal,'" as defendant would have it.[3]  In our view, the phrase "mandatory supervision" merely describes the type of supervision the probation department must provide for certain felons

---

[3]  According to defendant, mandatory supervision is "a unique procedure, distinct from a grant of probation or a conditional sentence."

6

sentenced under the Realignment Act. The purpose of the Realignment Act was to shift "responsibility for the custodial housing and postrelease supervision of certain felons from the state to the local jails and probation departments. [Citations.] . . . [To that end,] [t]he Legislature stated that California must support 'community-based corrections programs and evidence-based practices that will achieve improved public safety,' and that realigning low-level felony offenders to '*locally run community-based corrections programs*, which are strengthened through community-based punishment, evidence-based practices, improved supervision strategies, and enhanced secured capacity, will improve public safety outcomes among adult felons and *facilitate their reintegration back into society*." [Citation.] . . . [¶] . . . [¶] To implement this shift from the state to local communities, the Realignment Act provides that eligible felons will serve their prison terms in local jails rather than state prison. [Citations.] When imposing these local sentences, the trial court may select a straight commitment to jail for the applicable term, or it may select 'a hybrid sentence in which it suspends execution' of a portion of the term and releases the felon into the community under the mandatory supervision of the county probation department. [Citations.] Describing the split sentence option, section 1170, subdivision (h), provides that the court shall '*suspend execution*' of the portion of the term to be served under mandatory supervision in the community, and during the mandatory supervision period the defendant shall be supervised by the probation department 'in accordance with the *terms, conditions, and procedures*

*generally applicable to persons placed on probation . . . .'* [Citation.]" (*Wofford v. Superior Court* (2014) 230 Cal.App.4th 1023, 1032-1033, fn. omitted, original italics.)

Furthermore, the phrase "suspend execution of a sentence" is a term of art. As the People point out, there are several sections of the Penal Code that use this phrase or words very similar, as follows: Section 1203, subdivision (k) ["Probation shall not be granted to, nor shall the execution of, or imposition of sentence be suspended for," a person convicted of a violent or serious felony who was on probation at the time of the current offense]; section 1203.06, subdivision (a) ["probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for," a person who used firearms during the commission of enumerated serious and violent felonies]; sections 1203.065, subdivision (a) and 1203.066, subdivision (a) ["probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for," persons convicted of enumerated sex offenses]; section 1203.075, subdivision (a) ["probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for," persons who personally inflicted great bodily injury upon another during the commission of certain offenses]; section 1203.08, subdivision (a) ["probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for," persons convicted of designated felonies who were previously convicted of at least two prior designated felonies within 10 years]; and section 1203.09, subdivision (a) ["probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for," persons who committed designated crimes against elderly or disabled victims]. When the

8

Legislature uses a term of art, it is presumed to be aware of its established meaning and "a court construing that use must assume the Legislature was aware of the ramifications of its choice of language." (*Creutz v. Superior Court* (1996) 49 Cal.App.4th 822, 829 [Fourth Dist., Div. Two].) Thus, by using the words "suspend execution" in section 1170, subdivision (h)(5), the Legislature indicated its intent to adopt the established meaning of the term, such that placing defendant on mandatory supervision simply means suspending the execution of his or her sentence and placing him or her on probation.

In requiring defendant be subject to mandatory supervision by the probation department, the trial court suspended the execution of his remaining sentence and, in effect, placed him on probation. However, section 18780 prohibits such action. Thus, we conclude the trial court imposed an unlawful sentence.

## III. DISPOSITION

The judgment is reversed as to defendant's sentence, and the case is remanded for resentencing consistent with the views expressed herein. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:

RAMIREZ
P.J.

KING
J.

9

Filed 7/17/15

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | E061733 |
| Plaintiff and Appellant, | |
| | (Super.Ct.No. BAF1100559) |
| v. | |
| | ORDER CERTIFYING OPINION |
| ZACKARIAH WILLIAM BORYNACK, | FOR PUBLICATION |
| Defendant and Respondent. | |

A request having been made to this court pursuant to California Rules of Court,

rule 8.1120(a) for publication of a nonpublished opinion heretofore filed in the above-

entitled matter on June 24, 2015, and it appearing that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c);

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rules 8.1105(c)(4) and 8.1105(c)(6).  The opinion filed in this matter on June 24, 2015, is certified for publication.

RAMIREZ

P. J.

I concur:

KING

J.

11