Filed 3/28/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KODY LEE SAMUELS,<br><br>    Defendant and Appellant. | 2d Crim. No. B280619<br>(Super. Ct. No. 1450951)<br>(Santa Barbara County) |

In 2011, the Legislature enacted the Criminal Justice Realignment Act (Realignment Act or Act) to address public safety issues. (*People v. Scott* (2014) 58 Cal.4th 1415, 1418 (*Scott*).) Among the Act's purposes are: (1) reducing recidivism, and (2) using resources more efficiently by supporting community-based corrections programs. (Pen. Code,[1] § 17.5, subd. (a)(1) & (8)(B); see also *People v. Lynch* (2012) 209 Cal.App.4th 353, 361; *People v. Cruz* (2012) 207 Cal.App.4th 664, 679.) One such community-based program is the "'split sentence,' which allows a defendant to serve a realigned sentence partially

---

[1] All further undesignated statutory references are to the Penal Code.

in local custody and partially on mandatory supervision by the probation department." (*People v. Borynack* (2015) 238 Cal.App.4th 958, 963; see § 1170, subd. (h)(5).) While under mandatory supervision, a defendant is "entitled to only actual time credit against the term of imprisonment" unless "in actual custody related to the sentence imposed by the court." (§ 1170, subd. (h)(5)(B).)

Here, we hold that pursuant to section 1170, subdivision (h)(5)(B), an incarcerated defendant may not accrue section 4019 credits against a term of mandatory supervision unless the conduct resulting in the supervision was the "true and only unavoidable basis" for the incarceration.[2] (*People v. Bruner* (1995) 9 Cal.4th 1178, 1192, italics omitted (*Bruner*).) If the defendant's status and performance on mandatory supervision were merely factors the court considered in its decision to impose custodial time in another case, the defendant is entitled to only actual time credits against the term of mandatory supervision. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In March 2014, Kody Lee Samuels pled no contest to the unlawful driving or taking of a vehicle (the vehicle case). (Veh. Code, § 10851, subd. (a).) The trial court suspended execution of sentence and ordered five years of mandatory supervision. (§ 1170, subd. (h)(5)(B).)

Over the next 14 months, Samuels violated the terms of his supervision multiple times. He served several stints in

---

[2] We do not consider, and our holding does not affect, the credits a defendant may earn during a period of incarceration if mandatory supervision is revoked. (See §§ 1203.2, 1203.3, 1203.35, 4019, subd. (i)(2).)

2

custody.  In May 2015, he pled no contest to possession of methamphetamine for sale (the drug case).  (Health & Saf. Code, § 11378.)  He also admitted violating the terms of his mandatory supervision.  The trial court sentenced him to three years in county jail on the drug case.  It released him from custody on the vehicle case, and reinstated mandatory supervision.

Samuels was incarcerated from May 21, 2015, to May 5, 2016.  After his release, Samuels moved to correct the credit calculation in his vehicle case, claiming entitlement to work and conduct credits for the 351 days he spent in jail.  (See § 4019, subds. (a)(6), (b) & (c).)  The trial court denied the motion.  It found that Samuels was released from custody in his vehicle case on May 20, 2015, and that Samuels's drug case was "unrelated" to his vehicle case.  Accordingly, it ruled that Samuels was not in "actual custody" on his vehicle case from May 2015 to May 2016, and was not entitled to work and conduct credits against his term of mandatory supervision.

DISCUSSION

Samuels contends he was in "actual custody related to the sentence imposed by the [trial] court" on his vehicle case when he was incarcerated on his drug case, and is thus entitled to work and conduct credits against his term of mandatory supervision.  His logic is as follows:  The court presumably considered all relevant factors when it sentenced him on his drug case.  (Cal. Rules of Court, rule 4.409.)  Relevant factors in aggravation include his status as a mandatory supervisee and his performance during supervision.  (Cal. Rules of Court, rule 4.421(b)(4) & (5).)  The mandatory supervision in Samuels's vehicle case is thus presumed to have factored into the sentence imposed on his drug case.  His custody on the latter is therefore

3

"related to the sentence imposed" on the former.  We are not persuaded.

This appeal presents a question of statutory interpretation subject to de novo review.  (*People v. Prunty* (2015) 62 Cal.4th 59, 71.)  "'"'As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]'"'" (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)  "'"'We begin by examining the statute's words, giving them a plain and commonsense meaning.'"' [Citation.]" (*Ibid.*)  We "give meaning to every word in [the] statute and . . . avoid constructions that render words, phrases, or clauses superfluous. [Citations.]" (*Klein v. United States of America* (2010) 50 Cal.4th 68, 80.)  "We must follow the statute's plain meaning, if such appears, unless doing so would lead to absurd results the Legislature could not have intended.  [Citations.]" (*People v. Birkett* (1999) 21 Cal.4th 226, 231 (*Birkett*).)

"If our examination of the statutory language leaves doubt about its meaning, we may consult other evidence of the Legislature's intent, such as the history and background of the measure.  [Citations.]" (*Birkett*, *supra*, 21 Cal.4th at pp. 231-232.)  We may also examine "the statutory scheme of which the statute is a part.  [Citations.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008.)  We strive to harmonize provisions relating to the same subject matter (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 659), bearing in mind that "[w]here a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, the Legislature is presumed to have adopted that construction" in the more recently enacted statute (*People v.*

4

*Harrison* (1989) 48 Cal.3d 321, 329 (*Harrison*); see also *Scott, supra,* 58 Cal.4th at p. 1424 [construing other provisions of the Realignment Act]).

Applying these principles here, we conclude that the trial court properly denied Samuels's request for section 4019 credits against the term of mandatory supervision because he was not "in actual custody related to the sentence imposed by the court" in his vehicle case from May 21, 2015, to May 5, 2016. The court released Samuels from custody on his vehicle case and reinstated mandatory supervision on May 20, 2015. By definition, a defendant under mandatory supervision is not under restraint. (§ 1170, subd. (h)(5)(B) [mandatory supervision commences "upon release from physical custody or an alternative custody program"].) A defendant may not accrue section 4019 credits if not under restraint. (*People v. Blunt* (1986) 186 Cal.App.3d 1594, 1600.)

Moreover, allowing Samuels to accrue section 4019 credits against both his drug case and his vehicle case would condone the "dual-credit windfall" our Supreme Court has repeatedly disavowed. (*Bruner, supra,* 9 Cal.4th at p. 1192; see also *In re Joyner* (1989) 48 Cal.3d 487, 494-495 (*Joyner*); *In re Rojas* (1979) 23 Cal.3d 152, 155-157 (*Rojas*).) *Bruner, Joyner,* and *Rojas* considered situations in which defendants sought presentence credit under section 2900.5 while in custody on pending charges, despite already being incarcerated for separate offenses. (*Bruner,* at pp. 1183-1192.) In all three cases, the court rejected the defendants' requests for credits. (*Ibid.*) The defendants were not in custody because of the pending charges; they were in custody because of the sentences imposed in previous cases. (*Ibid.*) Even if they posted bail in their pending

5

cases, they would not be released. (*Id.* at p. 1192.) There was thus no nexus between the defendants' incarceration and the pending charges, and credits under section 2900.5 were not permitted. (*Ibid.*) "[S]ection 2900.5 is intended to provide equitable treatment for one held in pretrial custody on mere charges of crime, not to give credit for time already being served and credited on another term or sentence for unrelated violations." (*Ibid.*, italics omitted.)

Bruner overruled *In re Atiles* (1983) 33 Cal.3d 805 (*Atiles*) to the extent it reached a contrary conclusion. (*Bruner*, *supra*, 9 Cal.4th at p. 1194.) Both *Bruner* and *Atiles* considered the dual-credit issue in the context of a defendant's parole violation: "how section 2900.5 [is] applied when a defendant sentenced to a new criminal term seeks credit for presentence custody attributable to a parole revocation caused in part, but not exclusively, by the conduct that led to the new sentence." (*Bruner*, at pp. 1182-1183.) In *Atiles*, the court held that a trial court "is not required to eliminate all other possible bases for the defendant's presentence incarceration" before granting section 2900.5 credits. (*Atiles*, at p. 810.) Instead, "[t]he court need only determine that the defendant was not already serving a term for an unrelated offense when restraints related to the new charge were imposed on him, and the conduct related to the new charge is *a basis* for those restraints." (*Ibid.*, italics added.)

The *Bruner* court rejected this holding, finding persuasive the concerns Justice Mosk expressed in his dissent in *Atiles*. (*Bruner, supra*, 9 Cal.4th at p. 1193.) "[N]either the words nor the history of section 2900.5 implie[d] that separately imposed criminal and revocation terms based on unrelated conduct should collapse into one simultaneous term whenever it

6

happens that there was some common factual basis for both proceedings." (*Ibid*.) Rather, "where a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint." (*Id*. at pp. 1193-1194.)

The situation here is analogous. Like the *Bruner*, *Joyner*, and *Rojas* defendants, Samuels seeks dual credits for "separately imposed . . . terms based on unrelated conduct": that in his vehicle case, and that in his drug case. (*Bruner*, *supra*, 9 Cal.4th at p. 1193.) But Samuels's vehicle case was not the "true and only unavoidable basis" for the time he spent in custody (*id*. at p. 1192, italics omitted); it was merely one factor the trial court presumably considered when it sentenced him to jail in his drug case. Under *Bruner*, that the vehicle case provided *a basis* for Samuels's jail sentence does not entitle him to credits against his term of mandatory supervision. (*Id*. at p. 1193.) "But for" causation is required. (*Id*. at pp. 1193-1194.)

The purposes of the Realignment Act reinforce our conclusion. The Act aims to "reduc[e] recidivism among criminal offenders" and to increase "[i]ntensive community supervision." (§ 17.5, subd. (a)(1) & (8)(B).) Allowing Samuels to accrue section 4019 credits on his vehicle case while incarcerated on his drug case could encourage recidivism by rewarding him with a shorter term of mandatory supervision. And a shorter term of mandatory supervision would decrease, rather than increase, the intensive community supervision the trial court ordered Samuels to receive.

7

Samuels argues we should not apply the *Bruner* standard here because the Legislature was aware of the strict "but for" causation requirement of section 2900.5 and used different language when it wrote section 1170, subdivision (h)(5)(B). (See *People v. Weidert* (1985) 39 Cal.3d 836, 844 [the Legislature is "deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted"].) But under section 2900.5, subdivision (b), a defendant can only earn credits "where the custody . . . is attributable to proceedings *related to* the same conduct for which the defendant has been convicted." (Italics added.) And under section 1170, subdivision (h)(5)(B), a defendant can only earn credits where the "custody [is] *related to* the sentence imposed by the court." (Italics added.) Because the relevant language in the two statutes is identical, we presume the Legislature meant to adopt the strict causation requirement of section 2900.5, subdivision (b), when it wrote section 1170, subdivision (h)(5)(B). (*Scott, supra*, 58 Cal.4th at p. 1424; *Harrison, supra*, 48 Cal.3d at p. 329; see *Bruner, supra*, 9 Cal.4th at p. 1180 ["related to" requires application of a strict causation standard].)

Samuels also argues that the trial court's application of a strict causation requirement to section 1170, subdivision (h)(5)(B), forced counsel to argue against release on his vehicle case—and for a jail term concurrent with his drug case instead— to entitle him to conduct credits, which he deems an absurd proposition. (See *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 289 [attorney should not take a position adverse to a client's interest].) But counsel did not argue for a concurrent jail term on the vehicle case at sentencing. We thus need not consider Samuels's argument here. (*People v. Brawley* (1969) 1 Cal.3d

8

277, 294-295 [issues not raised at trial and not supported by record on appeal need not be considered].)  We note, however, that arguing for incarceration over release is not an inherently absurd proposition; a defendant may rationally choose a shorter term of custody over a longer term of supervision.  (See *In re Tyrell J.* (1994) 8 Cal.4th 68, 82, overruled on other grounds by *In re Jaime P.* (2006) 40 Cal.4th 128, 139.)

Finally, Samuels urges us to apply the rule of lenity to resolve this case in his favor.  But "the rule of lenity applies ""only if two reasonable interpretations of the statute stand in relative equipoise.' [Citation.]" [Citations.]' [Citations.]  'The rule "has no application where, 'as here, a court "can fairly discern a contrary legislative intent."""  [Citations.]' [Citation.]" (*Scott*, *supra*, 58 Cal.4th at p. 1426.)

DISPOSITION

The trial court's January 25, 2017, order denying Samuels's motion to correct credits is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>


TANGEMAN, J.

We concur:


YEGAN, Acting P. J.


PERREN, J.

9

Gustavo E. Lavayen, Judge

Superior Court County of Santa Barbara

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Analee J. Brodie, Deputy Attorney General, for Plaintiff and Respondent.