Filed 8/11/21

CERTIFIED FOR PARTIAL PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----


| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C092097 |
| v. | (Super. Ct. No. 18CF02605) |
| NATHAN JOHN HENDERSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Butte County, Jesus A. Rodriguez, Judge. Affirmed as modified.

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Carlos A. Martinez and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

1

Defendant Nathan John Henderson pleaded no contest to possession of a nunchaku (Pen. Code, § 22010)[1] and admitted a prior prison term (§ 667.5, subd. (b)).  On August 8, 2018, the trial court imposed an aggregate sentence of four years, consisting of the following:  three years for the nunchaku possession plus a consecutive year for the prior prison term enhancement pursuant to section 667.5, subdivision (b).  The trial court suspended execution of the final 1,096 days of the sentence and ordered them to be served as a period of mandatory supervision with various terms and conditions.  (§ 1170, subd. (h).)

Defendant subsequently admitted violating his mandatory supervision on four occasions.  On May 27, 2020, the trial court terminated defendant's mandatory supervision, reaffirmed his sentence, but declined to strike the prior prison term enhancement pursuant to Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136), effective January 1, 2020, concluding that defendant's sentence had become a final judgment 60 days after his sentence was pronounced on August 8, 2018, and thus defendant was not entitled to retroactive relief.

Defendant now contends the trial court erred in declining to strike the prior prison term enhancement.  In the unpublished portion of this opinion, we agree.  However, in light of the California Supreme Court's decision in *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*), we asked the parties for supplemental briefing on whether striking the prior prison term enhancement while maintaining the remainder of the plea agreement would deprive the People of the benefit of their bargain, such that the People must be afforded an opportunity to withdraw from the plea agreement.  Defendant argues we may strike the enhancement and keep the plea deal intact, whereas the People assert we must remand to permit them to withdraw from the plea agreement.

---

[1] Undesignated statutory references are to the Penal Code.

In the published portion of this opinion, we conclude *Stamps* is not on point because in this case the parties entered into an open plea agreement rather than agreeing to a stipulated sentence. We will modify the judgment to strike defendant's prior prison term enhancement and affirm the judgment as modified.

DISCUSSION

I

Defendant argues he is entitled to the retroactive application of Senate Bill 136. Relying on *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*), defendant asserts that because the trial court had ongoing authority to revoke, modify, or terminate defendant's mandatory supervision, the criminal proceeding had not concluded and Senate Bill 136 was in effect when the trial court declined to strike the prior prison term enhancement.

The People counter that defendant's judgment became final 60 days after August 8, 2018, citing California Rules of Court, rule 8.308(a). The People acknowledge the holding in *People v. Conatser* (2020) 53 Cal.App.5th 1223, review granted Nov. 10, 2020, S264721 (*Conatser*), which relied on *McKenzie* to conclude that a defendant with a split sentence is entitled to the ameliorative effect of the enactment of Health and Safety Code section 11370.2 because the split sentence meant his judgment was not yet final. However, the People argue *Conatser* wrongly equated a split sentence with a grant of probation.

Defendant urges us to follow *Conatser*. He also relies on *People v. Contreraz* (2020) 53 Cal.App.5th 965, review granted Nov. 10, 2020, S264638 (*Contreraz*), and *People v. Martinez* (2020) 54 Cal.App.5th 885, review granted Nov. 10, 2020, S264848 (*Martinez*).

We agree with defendant that *McKenzie* and the subsequent cases applying it support the retroactive application of Senate Bill 136 in this case.

Signed by the Governor on October 8, 2019, and effective January 1, 2020, Senate Bill 136 amends section 667.5, subdivision (b) to eliminate the one-year prior

3

prison term enhancement for most prior convictions. (Stats. 2019, ch. 590, § 1.) An exception, not applicable here, is made for a qualifying prior conviction on a sexually violent offense, as defined in Welfare and Institutions Code section 6600, subdivision (b). The statute is retroactive and applies to cases where the judgment is not yet final as of its effective date. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303, 308; *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).)

The determination of when a sentence becomes a final judgment under *Estrada* is a question of law that we review de novo. (See *People v. Arroyo* (2016) 62 Cal.4th 589, 593.) "In a criminal case, judgment is rendered when the trial court orally pronounces sentence." (*People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9.) But for " 'purposes of the *Estrada* rule, a judgment is "not final so long as the courts may provide a remedy on direct review [including] the time within which to petition to the United States Supreme Court for writ of certiorari." ' " (*People v. Barboza* (2018) 21 Cal.App.5th 1315, 1319.) Thus, a judgment becomes final when it has reached final disposition in the highest court authorized to review it. (*People v. Rossi* (1976) 18 Cal.3d 295, 304.)

Here, the trial court issued a split sentence, which involves imposing the sentence and then "suspending execution of the concluding portion of [it]." (*People v. Borynack* (2015) 238 Cal.App.4th 958, 963; see § 1170, subd. (h)(5)(B).) The portion of a defendant's term that is suspended pursuant to section 1170, subdivision (h)(5) is known as mandatory supervision. (§ 1170, subd. (h)(5)(B).) The period of supervision during which "the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation" shall be mandatory, and may not be revoked or modified except by court order and following a procedure conducted pursuant to either subdivisions (a) and (b) of section 1203.2 or section 1203.3. (§ 1170, subd. (h)(5)(B).)

In *McKenzie*, the California Supreme Court addressed "whether a convicted defendant who is placed on probation after imposition of sentence is suspended, and who

4

does not timely appeal from the order granting probation, may take advantage of ameliorative statutory amendments that take effect during a later appeal from a judgment revoking probation and imposing sentence." (*McKenzie, supra*, 9 Cal.5th at p. 43.) The defendant had pleaded guilty to multiple drug-related offenses and admitted four prior felony drug-related convictions under Health and Safety Code former section 11370.2. (*McKenzie,* at p. 43.) The trial court suspended imposition of sentence and placed the defendant on probation. (*Ibid*.) After the defendant violated the terms of his probation, the trial court revoked defendant's probation, declined to reinstate it, and imposed a prison sentence that included four enhancements under section 11370.2. (*McKenzie,* at p. 43.) While the defendant's appeal was pending, the governor signed Senate Bill No. 180 (2017-2018 Reg. Sess.) (Senate Bill 180), which amended Health and Safety Code section 11370.2 to repeal sentencing enhancements for various drug convictions. (*McKenzie,* at p. 43.) The Supreme Court concluded defendant was entitled to the retroactive benefit of Senate Bill 180 because the original order granting probation was not the final judgment for purposes of *Estrada.* (*McKenzie,* at p. 46.) *Estrada* held that ameliorative statutory amendments apply to defendants if the amendment lessening punishment becomes effective "prior to the date the judgment of conviction becomes final." (*Estrada, supra*, 63 Cal.2d at p. 744.) In *McKenzie*, the Supreme Court reasoned that there is a " 'substantial and pertinent difference between an order granting probation and a final judgment.' " (*McKenzie,* at pp. 47-48.) It stated that a criminal action continues throughout the period of probation and only terminates, along with the trial court's jurisdiction to impose a final judgment, when the probation period ends. (*Id.* at p. 47.) Thus, it is "irrelevant that '. . . an order granting probation is deemed a "final judgment" for the purpose of taking an appeal.' [Citation.]" (*Ibid*.) " '[S]uch an order' has only 'limited finality' and ' "does not have the effect of a judgment for other purposes," ' " such as determining whether a new ameliorative statute is retroactive under *Estrada*. (*Ibid*.)

5

The Supreme Court noted its analysis was consistent with *People v. Chavez* (2018) 4 Cal.5th 771 (*Chavez*), which considered when a judgment for purposes of a dismissal under section 1385 becomes final for a defendant who was granted and completed probation. The court in *Chavez* stated that "[t]he finality of a sentence 'depends on the outcome of the probationary proceeding' and 'is not a final judgment' at the imposition of sentence and order to probation. [Citation.] Instead of a final judgment, the grant of probation opens the door to two separate phases for the probationer: the period of probation and the time thereafter." (*Chavez,* at p. 781; see *McKenzie, supra*, 9 Cal.5th at pp. 47-48.) Thus, the criminal action ended, and final judgment was entered, only when the defendant's probation had expired. (*McKenzie,* at p. 46, citing *Chavez,* at p. 777.) *McKenzie*'s reliance on *Chavez* supports extending its ruling to situations where the court retains some jurisdiction over defendant, such with as a split term.

*Martinez, supra*, 54 Cal.App.5th 885, review granted, is directly on point and is persuasive. In *Martinez*, the Second District Court of Appeal, Division 6, considered whether section 667.5, subdivision (b) applied to a split sentence imposed before the legislation took effect. (*Martinez,* at p. 889.) The court reasoned that mandatory supervision is akin to probation because it similarly involves the trial court's continued ability to revoke or modify the terms of supervision, and thus is also "conditional or provisional in nature." (*Id.* at p. 893.) It found no meaningful distinction between a trial court suspending imposition of sentence (such as in *McKenzie*) and suspending execution of sentence (the situation in *Martinez*) for purposes of determining whether a criminal proceeding has reached its final judgment. (*Martinez,* at p. 893.) It concluded the defendant's case was not final under *Estrada*. (*Martinez,* at p. 889.)

Other California appellate courts, relying on *McKenzie*, have reached similar conclusions. (See *Conatser, supra*, 53 Cal.App.5th at pp. 1229-1230 [Senate Bill 180 and split term], review granted; *Contreraz, supra*, 53 Cal.App.5th at pp. 971-972 [Senate Bill No. 620 (2017-2018 Reg. Sess.) and probation], review granted; *People v.*

6

*Lopez* (2020) 57 Cal.App.5th 409, 413 [amended Health & Saf. Code, § 11352 and mandatory supervision], review granted Jan. 27, 2021, S266016; *People v. Andahl* (2021) 62 Cal.App.5th 203, 211 [Senate Bill 136 and probation], review granted June 16, 2021, S268336.)

In addition, the California Supreme Court recently decided *People v. Esquivel* (2021) 11 Cal.5th 671, holding that where execution of sentence is suspended, the defendant is placed on probation, and the probation is subsequently revoked, the defendant's judgment is not final for purposes of *Estrada* if the defendant may still timely obtain direct review of the order revoking probation and causing the state prison sentence to take effect. (*Id.* at pp. 678-681.) The Court determined there is "no persuasive reason to presume that the Legislature would wish to extend the benefit of ameliorative legislation to suspended-imposition defendants whose probation is revoked (per *McKenzie*), but not to suspended-execution defendants whose probation is revoked." (*Id.* at p. 680.) Accordingly, the Court held that "legislation ameliorating punishment presumptively applies to suspended execution cases pending on appeal from an order causing a previously imposed sentence to take effect." (*Ibid.*) The defendant in *Esquivel* was permitted to seek retroactive relief under Senate Bill 136. (*Esquivel,* at p. 680.)

In this case, the trial court suspended execution of a portion of defendant's sentence on August 8, 2018, and placed defendant on mandatory supervision. The trial court retained the authority to revoke or modify the mandatory supervision. (§ 1170, subd. (h)(5)(B).) When the trial court terminated defendant's mandatory supervision on May 27, 2020, Senate Bill 136 was already in effect, defendant's court proceedings had not yet concluded, and defendant's judgment was not final. As a result, defendant was entitled to the retroactive application of Senate Bill 136.

## II

The parties submitted supplemental briefs addressing whether we must give the People the opportunity to withdraw from the open plea agreement where, as here, we

7

determine defendant is entitled to the benefits of Senate Bill 136. Although there is a split in authority in the context of a plea agreement involving a stipulated sentence,[2] defendant argues *Stamps* is distinguishable from this case and that we should keep the remainder of the open plea deal intact, following the settled rule that plea agreements are deemed to incorporate changes in the law. The People counter that *Stamps* controls here, and that striking the prior prison term enhancement without allowing them to withdraw from the plea agreement would deprive the People of the benefit of the bargain.

In *Stamps*, the parties entered into a negotiated plea with a specified prison term, which included a prior serious felony enhancement. (§ 667, subd. (a); *Stamps, supra*, 9 Cal.5th at p. 693.) After the defendant entered his plea, the Legislature passed Senate Bill No. 1393 (2017-2018 Reg. Sess.), which granted the trial court discretion to strike the prior serious felony enhancement in the furtherance of justice. (*Stamps,* at p. 692.) The defendant appealed, seeking remand to allow the trial court to strike the enhancement from the agreed-upon sentence but otherwise keep the plea bargain intact. (*Id*. at p. 700.) The California Supreme Court concluded that Senate Bill No. 1393 applied retroactively but rejected defendant's argument that, on remand, the trial court could dismiss the five-year prior serious felony enhancement while otherwise maintaining the plea agreement. (*Stamps,* at pp. 693-699, 700.) Noting that the parties entered into a plea agreement for a specified prison term based on the prior serious felony enhancement, the Court said the trial court could not unilaterally modify the terms absent the prosecution's agreement. (*Id.* at pp. 700-704.) Relying on the stipulated nature of the sentence, the Court explained

---

[2] Compare, e.g., *People v. Joaquin* (2020) 58 Cal.App.5th 173, review granted Feb. 24, 2021, S266594, *People v. Griffin* (2020) 57 Cal.App.5th 1088, review granted Feb. 17, 2021, S266521, *People v. Hernandez* (2020) 55 Cal.App.5th 942, review granted Jan. 27, 2021, S265739, *People v. Barton* (2020) 52 Cal.App.5th 1145, with *People v. France* (2020) 58 Cal.App.5th 714, review granted Feb. 24, 2021, S266771, *People v. Andahl, supra*, 62 Cal.App.5th 203.

that " 'Senate Bill No. 1393 does not entitle defendants who negotiated stipulated sentences "to whittle down the sentence 'but otherwise leave the plea bargain intact.' " ' " (*Stamps,* at p. 706.) That would fundamentally alter the terms of the agreement, depriving the People of the benefit of their bargain. (*Id.* at p. 703.)

But such concerns are absent in the context of this open plea case. An open plea is one under which there is no promise about the nature or duration of the defendant's sentence. (*People v. Williams* (1998) 17 Cal.4th 148, 156.) Here, although the parties agreed to a maximum possible sentence of four years, they left the matter of probation and sentencing to the discretion of the trial judge. The open plea agreement contemplated a range of possible sentencing outcomes, from a grant of probation to four years in prison (the upper term of three years for possession plus one year for the prior prison term enhancement). And although it chose not to, the trial court had discretion in the context of the open plea to dismiss defendant's prior prison term enhancement in the interests of justice under section 1385. (*People v. Thomas* (1992) 4 Cal.4th 206, 209-210.) The plea deal permitted, but did not necessarily include, the additional year for the prior prison term enhancement.

Under the circumstances, striking the one-year enhancement would not be inconsistent with the open plea agreement. The sentence would stay within the range of possible outcomes agreed to by the parties. Thus, striking the enhancement while preserving the plea deal does not deprive the People of the benefit of their bargain, or grant defendant a bounty to which he is not entitled, or require the trial court to unilaterally restructure the terms of the plea deal. Striking the enhancement in this case does not require remand.

## DISPOSITION

The judgment is modified to strike the one-year prior prison term enhancement. (§ 667.5, subd. (b).) As modified, the judgment is affirmed. The trial court is directed to

prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

_____/S/_____
MAURO, J.

We concur:

_____/S/_____
RAYE, P. J.

_____/S/_____
DUARTE, J.