Filed 10/30/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>THOMAS JOHN GRZYMSKI,<br><br>     Defendant and Appellant. | A153015<br><br>(Humboldt County<br>Super. Ct. Nos. CR1704050,<br>CR1500452, CR1303138B) |

In 2013, defendant Thomas Grzymski pleaded guilty to possession of heroin for sale and admitted to two sentencing enhancements under Health and Safety Code[1] section 11370.2 based on previous convictions for drug-related crimes. The trial court imposed a "split sentence" of 10 years, under which part of the total term would be served in county jail and the remainder would be served on mandatory supervision. (See Pen. Code, § 1170, subd. (h)(5).)

Over the next four years, Grzymski repeatedly violated the terms of his mandatory supervision. In a second prosecution in 2015, he admitted to transportation of methamphetamine and two additional section 11370.2 sentencing enhancements. The trial court imposed a split sentence of 10 years to run concurrent to the sentence in the first case. And in a third prosecution, which led to the November 2017 order from which Grzymski now appeals, the court sentenced him to 16 months in prison on weapons-related offenses, terminated mandatory supervision in the first two cases, and ordered that he serve the balance of the 10-year split sentences in prison.

---

[1] All further statutory references are to the Health and Safety Code unless otherwise noted.

1

Meanwhile, Senate Bill No. 180 (2017-2018 Reg. Sess.) was enacted in October 2017 and went into effect on January 1, 2018. The bill limited the reach of section 11370.2 by authorizing sentencing enhancements only for prior convictions that, unlike Grzymski's, involved using a minor to commit drug-related crimes.

Grzymski was sentenced to a total of six years as a result of the section 11370.2 sentencing enhancements. On appeal, he contends that these enhancements must be reversed. The parties agree that Senate Bill No. 180 is retroactive, meaning that it applies to judgments that were not final when it took effect, under *In re Estrada* (1965) 63 Cal.2d 740, 742 (*Estrada*). (See *People v. McKenzie* (2018) 25 Cal.App.5th 1207, 1213 (*McKenzie*).) They disagree, however, as to when the two split sentences at issue became final judgments for purposes of determining whether the new law applies here. We hold that an unappealed split sentence is final within the meaning of *Estrada* 60 days after it is imposed. Because Grzymski did not appeal from the 2013 or 2015 split sentences, they have been final for years. As a result, he is not entitled to relief under Senate Bill No. 180, and we affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

The relevant procedural history spans several years and involves three cases. In September 2013, Grzymski was charged in case no. CR1303138B with felony counts of possession of heroin for sale, possession of methamphetamine for sale, and possession of metal knuckles, and a misdemeanor count of possession of a smoking device.[2] In connection with the two drug-possession counts, sentencing enhancements were alleged under section 11370.2, subdivisions (a) (heroin) and (b) (methamphetamine) based on four prior convictions for drug-related offenses, one in 2007 and three in 2004.[3]

---

[2] The charges were brought under sections 11351 (possession of heroin), 11378 (possession of methamphetamine), and 11364.1, subdivision (a) (possession of smoking device), and Penal Code section 21810 (possession of metal knuckles).

[3] The 2004 convictions were under section 11379, subdivision (a), and the 2007 conviction was under section 11378.

Under a plea agreement, Grzymski pleaded guilty to possession of heroin for sale and admitted to the 2007 conviction and one of the 2004 convictions. The remaining counts and allegations were dismissed. In December 2013, the trial court sentenced him to a total term of 10 years, composed of the upper term of four years for possession of heroin for sale and consecutive terms of three years each for the prior convictions. The court imposed a split sentence under which he was to serve two years in jail and eight years on mandatory supervision.[4]

Grzymski was released from jail and began his term of mandatory supervision in July 2014. The following January, his mandatory supervision was summarily revoked after the probation department filed a petition to revoke based on various violations, including his arrest earlier that month. As a result of this arrest, in March 2015 he was charged in case no. CR1500452 with felony counts of possession for sale of methamphetamine and transportation of methamphetamine.[5] In connection with both counts, sentencing enhancements were alleged under section 11370.2 based on six prior convictions for drug-related offenses.[6]

Under a plea agreement, Grzymski pleaded guilty to transportation of methamphetamine and admitted to two of the prior convictions, although our record does not reveal which ones. The remaining count and allegations were dismissed. In August 2015, the trial court sentenced him to the upper term of four years for transportation of methamphetamine and consecutive terms of three years each for the prior convictions. The court imposed another split sentence under which he was to serve

---

[4] Grzymski was also sentenced on three other pending matters to concurrent terms of three years per case.

[5] The charges were brought under sections 11378 (possession for sale) and 11379, subdivision (a) (transportation).

[6] The allegations were made under section 11370.2, subdivision (c). In addition to the same 2004 and 2007 convictions alleged in the first case, the other convictions alleged were the conviction under section 11351 in the first case and a conviction under section 11378 in one of the other cases resolved at the same time as that case was resolved.

four years in jail and six years on mandatory supervision, concurrent to the sentence in the first case. In the first case, he was ordered to serve a concurrent term of 180 days in jail and his mandatory supervision was reinstated.[7]

A year and a half later, in February 2017, Grzymski's mandatory supervision was again summarily revoked after the probation department filed another petition to revoke based on numerous violations. Grzymski admitted to the violations, and the trial court reinstated his mandatory supervision on the condition that he serve 364 additional days in jail. That May, his mandatory supervision was summarily revoked yet again and, after he admitted the new violations, reinstated on the condition that he serve 364 additional days in jail.

Finally, in October 2017, Grzymski's mandatory supervision was summarily revoked one more time for additional violations, including offenses leading to the filing of the third case against him, case no. CR1704050.[8] Grzymski admitted to violating his mandatory supervision in the first two cases, and he pleaded no contest to the charges in the third case. The next month, consistent with the plea agreement, the trial court sentenced him to 16 months in prison in the third case, terminated mandatory supervision in the first two cases, and ordered him to serve the balance of the two 10-year terms in prison.

## II.
### DISCUSSION

Although this case's procedural history is convoluted, the issue we must resolve is straightforward: when does a split sentence imposed under Penal Code section 1170, subdivision (h)(5) (section 1170(h)(5)) become a final judgment for retroactivity purposes? Grzymski claims that once the trial court "modified" the sentences imposed in

---

[7] As to the three other matters resolved with the 2013 case, the trial court ordered Grzymski to serve concurrent terms of 180 days in jail and reinstated his mandatory supervision.

[8] We do not discuss the third case in detail because Grzymski does not raise any claims involving it.

4

2013 and 2015 to eliminate the provision for a term of mandatory supervision, they were "no longer" final judgments under *Estrada*. We are not persuaded.

In general, statutes are presumed to operate prospectively. (*People v. Brown* (2012) 54 Cal.4th 314, 323.) *Estrada* established an exception to this presumption: "When the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*Brown*, at p. 323, fn. omitted, citing *Estrada*, *supra*, 63 Cal.2d at pp. 742-748.) Here, as we have said, it is uncontested that Senate Bill No. 180's amendments to section 11370.2 are retroactive under *Estrada*.

In 2011, the Legislature enacted the Criminal Justice Realignment Act, under which certain "low-level felony offenders . . . no longer serve their sentences in state prison" but instead "serve their sentences either entirely in county jail or partly in county jail and partly under the mandatory supervision of the county probation officer." (*People v. Scott* (2014) 58 Cal.4th 1415, 1418-1419.) The latter type of sentence, known as a split sentence, is imposed under section 1170(h)(5). Under that provision, unless it would be contrary to "the interests of justice," a court "imposing a sentence" of jail time on a covered offender "shall suspend execution of a concluding portion of the term for a period selected at the court's discretion. [¶] . . . The portion of a defendant's sentenced term that is suspended pursuant to [section 1170(h)(5)] shall be known as mandatory supervision." (§ 1170(h)(5)(B).) The statute further provides that "[t]he period of supervision"—during which "the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation"—"shall be mandatory, and may not be earlier terminated except by court order. Any proceeding to revoke or modify mandatory supervision under this subparagraph shall be conducted pursuant to either subdivisions (a) and (b) of [Penal Code] Section 1203.2 or Section 1203.3." (§ 1170(h)(5)(B).)

The question of when a sentence becomes a final judgment under *Estrada* is a question of law that we review de novo. (See *People v. Arroyo* (2016) 62 Cal.4th 589,

5

593.) "In a criminal case, judgment is rendered when the trial court orally pronounces sentence." (*People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9.) " 'For purposes of the *Estrada* rule, a judgment is "not final so long as the courts may provide a remedy on direct review [including] the time within which to petition to the United States Supreme Court for writ of certiorari." ' " (*People v. Barboza* (2018) 21 Cal.App.5th 1315, 1319.) A split sentence involves imposing the sentence and then "suspending execution of the concluding portion of [it]." (*People v. Borynack* (2015) 238 Cal.App.4th 958, 963; § 1170(h)(5)(B).) Thus, the trial court rendered judgments in 2013 and 2015 when it imposed the split sentences. Since Grzymski did not appeal from either, both became final long before Senate Bill No. 180 went into effect. As a result, the amendments to section 11370.2 do not apply.

The fact that the trial court suspended execution of a portion of Grzymski's sentences does not affect our conclusion, which is supported by the treatment of analogous sentences in the probation context. In *McKenzie*, the Fifth District Court of Appeal addressed when an order granting probation is final for purposes of determining whether a defendant is entitled to relief under Senate Bill No. 180. (*McKenzie*, *supra*, 25 Cal.App.5th at pp. 1211-1213.) As the court explained, "[w]hen probation is granted, . . . the timing of the judgment can vary because a trial court may grant probation by either suspending *imposition* of the sentence, or by imposing the sentence and suspending its *execution*. [Citation.] These two situations affect when the judgment becomes final, which in turn affects whether a defendant is eligible to seek the retroactive benefit of a change in law." (*Id.* at p. 1214.) Namely, "when the trial court initially suspends *imposition* of sentence and grants probation, 'no judgment is then pending against the probationer, who is subject only to the terms and conditions of the probation,' " but "when the trial court initially imposes sentence, but suspends *execution* of that sentence and grants probation, a judgment has been rendered." (*Ibid.*) In the latter situation, the "judgment will become final if the defendant does not appeal within 60 days." (*Ibid.*)

A split sentence involves suspending execution of part of the sentence, and Grzymski offers no cogent reason why *McKenzie*'s logic should not control. He argues

6

that "finality for the purposes of taking an appeal . . . is *not* necessarily the determining factor in assessing finality for purposes of *Estrada* retroactivity."  But the decision he cites merely reflects, consistent with *McKenzie*, that an order of probation suspending *imposition* of the sentence "is 'deemed to be a final judgment' for the limited purpose of taking an appeal therefrom" and "does not have the effect of a judgment for other purposes," including *Estrada* retroactivity.  (*People v. Superior Court (Giron)* (1974) 11 Cal.3d 793, 796; see *McKenzie*, *supra*, 25 Cal.App.5th at pp. 1214, 1217-1218.) *Giron* does not even mention orders suspending execution of the sentence, much less affect the principle that an unappealed order of probation suspending execution of the sentence becomes final for *Estrada* purposes within 60 days of being imposed. (*McKenzie*, at pp. 1217-1218; *People v. Barboza*, *supra*, 21 Cal.App.5th at pp. 1318-1319; *People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1421.)

Grzymski also argues that because the trial court modified "its earlier . . . orders to eliminate [their] mandatory supervision provision," they "are not final judgments and remain subject to review by this court."  He relies on *People v. Camp* (2015) 233 Cal.App.4th 461 (*Camp*), in which the Fourth District Court of Appeal addressed whether the trial court could terminate the mandatory supervision portion of a split sentence after learning that the defendant "was ineligible for mandatory supervision because he was subject to an immigration hold and would be deported upon his release from [local] custody."  (*Id.* at p. 464.)  In that case, even though the defendant had originally been sentenced to a total term of 28 months, with half to be served on mandatory supervision, his sentence was effectively reduced to 14 months once mandatory supervision was terminated.  (*Id.* at pp. 464-465.)  *Camp* held that the lower court had authority to do so, rejecting the People's contention that "the court's only options were to order Camp to serve the remainder of the 28-month sentence in custody, or permit him to withdraw his guilty plea."  (*Id.* at p. 464.)

*Camp* does not advance Grzymski's argument.  Even if a trial court has authority to terminate mandatory supervision without ordering that the suspended portion of the sentence be served, as *Camp* held, it does not follow that the sentence is therefore not a

7

final judgment under *Estrada*.  It is settled that an unappealed order of probation suspending execution of the sentence is final for retroactivity purposes after 60 days, yet such orders are still subject to modification under Penal Code sections 1203.2 and 1203.3, the same statutes that govern the modification of orders imposing split sentences. (§ 1170(h)(5)(B).)  And when a trial court sentences a defendant under Penal Code section 1170, which applies not only to split sentences but also to determinate sentences more broadly, under certain circumstances the court may recall the sentence within 120 days of a commitment and resentence the defendant.  (Pen. Code, § 1170, subd. (d)(1).)  But again, the possibility that a sentence may be recalled does not affect its finality.

We recognize there is a potential distinction between probation orders suspending execution of the sentence and orders imposing split sentences that involved a trial court's ability to change the length of the overall term when supervision is terminated.  When probation is terminated and an order suspending execution of the sentence is revoked, the trial court must "commit the probationer to prison for the term prescribed in the suspended sentence," based on language in Penal Code section 1203.2, subdivision (c) requiring the previously imposed judgment to " 'be in full force and effect.' "  (*People v. Howard* (1997) 16 Cal.4th 1081, 1094-1095.)  In other words, a court "has no authority, on revoking probation, to impose a lesser sentence at the precommitment stage."  (*Id.* at p. 1095.)  As *Camp* explained, however, Penal Code section 1203.2, subdivision (c) does not apply to split sentences.  (*Camp*, *supra*, 233 Cal.App.4th at p. 472.)  This difference preserves the possibility that despite *Howard*'s holding, a trial court may change the overall length of a split sentence when terminating mandatory supervision, but we need not pass on the issue here.  Even assuming that in this sense a split sentence is "less final" than a probation order suspending execution of the sentence, we are unable to conclude that such sentences are not final judgments merely because they are subject to modification.

## III.
### DISPOSITION

The November 8, 2017 order and judgment are affirmed.

_____

Humes, P.J.

We concur:

_____

Margulies, J.

_____

Banke, J.

Trial Court:

Humboldt County Superior Court

Trial Judge:

Hon. John T. Feeney

Counsel for Defendant and Appellant:

David L. Bernstein, under appointment by the Court of Appeal

Counsel for Plaintiff and Respondent:

Xavier Becerra, Attorney General

Gerald A. Engler, Chief Assistant Attorney General

Jeffrey M. Laurence, Senior Assistant Attorney General

René Chacón, Supervising Deputy Attorney General

Nanette Winaker, Deputy Attorney General

*People v. Grzymski*  A153015