Filed 9/1/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br>v.<br><br>RICHARD COOPER,<br><br>   Defendant and Appellant. | A156880<br><br>(Alameda County<br>Super. Ct. No. 122225) |

Defendant Richard Cooper was charged with two counts of murder for participating with another man in the horrific killing of a pregnant woman, Trenda Whitten, in 1994.  Cooper ultimately pleaded no contest to one count of second degree murder, and in 1999 he was sentenced to 15 years to life in prison.

Nearly two decades after Cooper's plea, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which altered liability for murder under the theories of felony murder and natural and probable consequences.  The bill also established a procedure, under newly enacted Penal Code[1] section 1170.95, for eligible defendants to petition for resentencing.  Cooper filed a petition for relief under that statute alleging he pleaded no contest to murder "in lieu of going to trial because [he] believed [he] could have been convicted of 1st or 2nd degree murder at trial pursuant

---

[1] All further statutory references are to the Penal Code.

1

to the felony murder rule or the natural and probable consequences doctrine." He also asked that counsel be appointed for him.

The trial court denied the petition without appointing counsel, concluding that Cooper was "ineligible for resentencing as a matter of law." Relying on the transcript of the preliminary hearing—which Cooper did *not* stipulate to as the factual basis of his plea—the court concluded that regardless of whether Cooper or the other man was "more culpable" for Whitten's death, Cooper's "murder conviction rests on a valid theory of murder."

On appeal, Cooper claims the trial court erred by summarily denying the petition without appointing counsel. We agree. Earlier this year, the Supreme Court granted review to decide when the right to counsel arises under section 1170.95, subdivision (c) (section 1170.95(c)). (*People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598 (*Lewis*).) Pending the Court's decision, we conclude that the right to counsel attaches upon the filing of a facially sufficient petition that alleges entitlement to relief. In so doing, we disagree with decisions of the Courts of Appeal that have held otherwise, including *Lewis* and *People v. Verdugo* (2020) 44 Cal.App.5th 320, review granted Mar. 18, 2020, S260493 (*Verdugo*). Even if an error in not appointing counsel may be harmless in some situations, such as when the petitioner is not entitled to relief as a matter of law, the error was prejudicial here. Accordingly, we reverse.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Whitten and her fetus were murdered in Oakland on the night of May 19, 1994. As discussed in more detail below, evidence was presented at the preliminary hearing that Cooper, who was then 18 years old, raped

2

Whitten while another man, Emilio Mitchell, Jr., kicked her in the face.[2] Mitchell repeatedly jumped onto Whitten's head, a cinder block was thrown on her head by both men, and Cooper cut Whitten's throat, possibly after she was already dead.  Based on this evidence, Cooper was charged with two counts of murder, with the accompanying allegation as to both crimes that he personally used a deadly and dangerous weapon, a cinder block.[3]  It was also alleged that he inflicted great bodily injury on Whitten during the crime.[4]

In April 1998, Cooper pleaded no contest to one count of second degree murder, and the remaining count and all enhancements were dismissed.  At the plea hearing, during the discussion of promises made to Cooper in exchange for his plea, his trial counsel stated, "The district attorney indicated that he would write in his letter to the Board of Prison Terms that the evidence supports the theory that the defendant is not a direct actor here but an aider and abettor."  The prosecutor confirmed this was the case.  Before taking the plea, the trial court asked whether there was "a stipulated factual basis for the plea," and Cooper's trial counsel stated, "So stipulated."  The record does not reveal, however, what that basis was.  Cooper was sentenced to 15 years to life in prison in November 1999.

On February 10, 2019, shortly after Senate Bill No. 1437 took effect, Cooper filed a petition for relief under section 1170.95.  Using a form prepared by Re:Store Justice, a cosponsor of the legislation (see *Verdugo*, *supra*, 44 Cal.App.5th at p. 324 & fn. 2), he checked boxes stating that a charging document had been filed against him allowing the prosecution to

---

[2] Mitchell was charged in a separate case, and the record is silent about its disposition.

[3] The murder charges were brought under section 187, and the weapon enhancements were alleged under section 12022, subdivision (b).

[4] The great-bodily-injury allegation was made under section 1203.075.

proceed under a felony murder theory or the natural and probable consequences doctrine; he entered a plea to first or second degree murder in lieu of going to trial because he believed he could have been convicted of murder under a felony murder theory or the natural and probable consequences doctrine; and he could not now be convicted of murder in light of Senate Bill No. 1437's changes to the law. In addition, he checked a box indicating that he was convicted of second degree murder under the natural and probable consequences doctrine or under the second degree felony murder doctrine and a box stating, "I request that this court appoint counsel for me during this re-sentencing process."[5] Cooper included with the petition the transcript of his plea hearing and his abstract of judgment.

A different judge than the judge who sentenced Cooper summarily denied the petition on February 21, 2019. Cooper did not appear, and the trial court did not appoint counsel to represent him. In its written order, the court stated that the order's "procedural and factual history [was] based on the Court's records in this matter[,] including the preliminary hearing transcript (dated 1 November 1994) and the change of plea transcript (8 April 1998)." The record before us includes both of these transcripts, as well as the abstract of judgment, but it does not include other court documents from the

---

[5] Cooper did not check the box indicating that he was convicted of first degree felony murder. He did check three of the requirements for that option—that he was not the actual killer, that he was not a major participant in the underlying felony or did not act with reckless disregard for human life, and that the victim was not a peace officer—but he left blank the box next to the fourth requirement, that he did not aid and abet the actual killer with an intent to kill.

4

1990's except for the November 14, 1994 information.[6]  Thus, it is unclear what other documents the court may have considered.

While recognizing that Cooper "did not specify what [the factual] basis [of his plea] was," the trial court recited the underlying facts based exclusively on the evidence presented at the preliminary hearing.  This evidence primarily consisted of the testimony of two minor brothers, L.M. and D.B., who were partying at their mother's apartment with Cooper, Mitchell, and others on the night in question.  The young men spotted Whitten walking down the street, and L.M. called her over at Cooper's request.  After going outside to talk to Whitten, Cooper returned to the apartment and obtained crack cocaine from Mitchell, indicating that he was going to show the drugs to Whitten so she would have sex with him but did not intend to give them to her.  Cooper and Whitten then went into the backyard of the apartment building next door.

About five minutes later, L.M. heard Whitten say she was pregnant.  Mitchell then went into the neighboring backyard.  A few minutes later, L.M. followed to see what was going on and saw Cooper having sex with Whitten, who was on the ground, and Mitchell kicking her in the face.  Whitten was trying to get away, and L.M. pulled Mitchell aside and told him to "let it go."  Mitchell said he was going to kill Whitten so that she did not snitch on him.  L.M. testified that Mitchell also tried to have sex with Whitten, but was unable to do so because she was moving too much.

At some point, Whitten grabbed L.M. and asked him to get her boyfriend, but instead, he went back inside to get help from his brother and

_____

[6] The information is included in the record only because it was an exhibit to the People's informal response to an unrelated habeas petition Cooper filed a few months before his section 1170.95 petition.

5

another friend. Once inside, L.M. looked out a window and saw that Mitchell was still kicking Whitten in the head and Cooper was still raping her. Apparently, while L.M. and the other friend went back outside, D.B. watched the attack from the apartment. D.B. testified that he saw Mitchell repeatedly jump from some nearby stairs onto Whitten's head, and he also saw Mitchell and Cooper take turns dropping a cinder block on her head.

Meanwhile, after L.M. went back outside, he saw Mitchell hit Whitten on the head with a cinder block "one last time." Mitchell and Cooper apparently left the backyard, but Cooper returned shortly afterward, saying he was going to "slit [Whitten's] throat" so that she did not snitch on him. D.B. testified that he saw Cooper grab Whitten's hair and slit her throat while Mitchell stood next to him. After the murder, Cooper and Mitchell burned their clothes in the parking lot of the brothers' apartment building.

The parties stipulated that if called to the stand, the pathologist who performed the autopsies would testify that Whitten's cause of death was "blunt trauma to the head associated with asphyxia due to compression of the neck," and the fetus's cause of death was "maternal death." The parties also stipulated that the pathologist would testify to finding, among other injuries, "extensive lacerations, contusions[,] and abrasions on [Whitten's] face and scalp[,] . . . extensive skull fractures, . . . brain contusions, . . . [and] incised wounds of the neck."

After describing this evidence presented at the preliminary hearing—to which, again, Cooper never stipulated—the trial court turned to its legal analysis. It characterized a court's task under the first sentence of section 1170.95(c) as "screen[ing] incoming resentencing petitions to determine if the petitioner is ineligible for resentencing as a matter of law." The court denied the petition on this basis, stating:

6

"[Cooper] lured [Whitten] into a dark driveway with the false promise of drugs.  Whether the sexual encounter began as a consensual one or not does not matter because it did not end as one.  Cooper continued to rape [Whitten] even after she said she was pregnant.  He continued to rape her even as Mitchell kicked her in the head.  He continued to rape her even after she asked [L.M.] for help.  Cooper and Mitchell then said they would kill [Whitten] to keep her from 'snitching' and they did just that in a particularly brutal manner.  Although [Whitten] would have been dead or dying by that point, Cooper inexplicably tried to cut her throat.  Both men burned and threw away their clothes before literally washing their hands of her.

"The Court need not split hairs over who is more culpable on these facts.  (§ 189, subds. (a) & (e).)  [Cooper's] murder conviction rests on a valid theory of murder; the conviction survives changes made by [Senate Bill No.] 1437 to . . . sections 188 and 189.  (§ 1170.95, subd. (a)(3).)  The petition is denied because [Cooper] is ineligible for resentencing under section 1170.95 as a matter of law.  (§ 1170.95[(c)].)"

## II.
## DISCUSSION

For reasons we shall explain, we hold that when a petitioner files a facially sufficient petition requesting counsel, as Cooper did, the trial court must appoint counsel and give the parties an opportunity to submit briefing before denying the petition.  While the denial of counsel may be harmless in some situations, such as when the petitioner is not entitled to relief as a matter of law, it was not harmless here.  Cooper's conviction was based on a plea whose particular factual basis was never established.  The trial court's ruling that Cooper was ineligible for relief as a matter of law was therefore mistaken, because it was based on impermissible factfinding that accepted

7

the truth of the preliminary-hearing testimony without giving Cooper the opportunity to challenge that testimony. Accordingly, we must reverse.

On remand, Cooper must be appointed counsel and be allowed to submit briefing, even though his petition's likelihood of success may be remote. The two witnesses who testified at the preliminary hearing described appalling acts of violence by Cooper against Whitten. If the facts those witnesses described are accepted, Cooper will not be entitled to relief under section 1170.95 because this evidence shows he intended to kill Whitten, even if he was not the "actual killer." (§ 189, subd. (e)(2); see § 188, subd. (a)(3).) Nonetheless, given both section 1170.95's statutory language and its legislative intent, Cooper is entitled to the assistance of appointed counsel to make his case to the extent he can.

A. *The Right to Counsel Under Section 1170.95 Attaches Upon the Filing of a Facially Sufficient Petition.*

Cooper claims that he was entitled to counsel under section 1170.95(c) when he filed a facially sufficient petition. We agree.

1. General legal standards

Senate Bill No. 1437, which took effect on January 1, 2019, was passed " 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247, quoting Stats. 2018, ch. 1015, § 1, subd. (e).) "Under the felony-murder rule as it existed prior to Senate Bill [No.] 1437, a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state." (*Lamoureux*, at pp. 247–248.) In

8

addition, "[i]ndependent of the felony-murder rule, the natural and probable consequences doctrine rendered a defendant liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*Id.* at p. 248.)

Senate Bill No. 1437 changed murder liability under these theories through two statutory amendments. First, "[t]he bill redefined malice under section 188 to require that the principal acted with malice aforethought. Now, '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' (§ 188, subd. (a)(3).)" (*People v. Turner* (2020) 45 Cal.App.5th 428, 433.) Second, the bill amended section 189 to provide that a defendant who was not the actual killer and did not have an intent to kill is not liable for felony murder unless he or she "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).)

Senate Bill No. 1437 also enacted section 1170.95, which establishes the procedure by which a defendant "convicted of felony murder or murder under a natural and probable consequences theory" may petition to have the "murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).) Briefly, there are four main steps in the process. First, the defendant files a petition, which the trial court may deny without prejudice if it does not contain certain required information. (§ 1170.95, subd. (b).) Second, the court determines whether the defendant has made a prima facie showing of entitlement to relief. If so, it issues an order to show cause. (§ 1170.95(c).) Third, the court holds an evidentiary hearing to determine whether the murder conviction should be vacated. (§ 1170.95,

subd. (d)(1), (3).) And finally, if the defendant is entitled to relief, the court recalls the sentence, vacates the murder conviction and any accompanying enhancements, and resentences the defendant. (§ 1170.95, subd. (d).) This case involves only the first two steps.

The defendant initiates the process by filing a petition in the sentencing court that must include three pieces of information. (§ 1170.95, subd. (b).) First, the petition must include "[a] declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a)." (§ 1170.95, subd. (b)(1)(A).) Those requirements are (1) "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; (2) "[t]he petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder"; and (3) "[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).) Second, the petition must include "[t]he superior court case number and year of the petitioner's conviction." (§ 1170.95, subd. (b)(1)(B).) And finally, the petition must state "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).)

If a petition is missing any of these three pieces of information and the missing information "cannot be readily ascertained by the [trial] court, the court may deny the petition without prejudice" to filing another petition that includes the required information. (§ 1170.95, subd. (b)(2).) We will refer to a petition that includes all the information required under section 1170.95,

10

subdivision (b), as a facially sufficient petition. (See *Verdugo*, *supra*, 44 Cal.App.5th at p. 323.)

Section 1170.95(c) addresses the procedure by which a trial court determines whether the petitioner is entitled to an evidentiary hearing. The subdivision provides in full: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor['s] response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

The primary issue in this case is when the right to counsel arises under section 1170.95(c). We review such issues of statutory interpretation de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) " ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose." ' " (*People v. Scott* (2014) 58 Cal.4th 1415, 1421.) We begin by considering the statutory language, " ' "giving [it] a plain and commonsense meaning." ' " (*Ibid.*) " ' " 'When [that] language . . . is clear, we need go no further.' [Citation.] But where a statute's terms are unclear or ambiguous, we may 'look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " ' " (*Ibid.*) Because " ' "[a] statute is passed as a whole and not in parts or sections[,] . . . each part or section should be construed in connection

with every other part or section so as to produce a harmonious whole,' ' " and we therefore interpret subdivision (c) in light of section 1170.95's other subdivisions. (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 52.)

2.    Other decisions interpreting section 1170.95(c)

"At first blush, [section 1170.95(c)] seems clear. The first sentence states the rule: 'The court shall review the petition and determine if the petitioner has made a prima facie showing that [he or she] falls within the provisions of this section.' [§ 1170.95(c).] The rest of the subdivision establishes the process for complying with that rule: Appoint counsel, if requested. Wait for the prosecutor's required response and the petitioner's optional reply. If the petitioner makes a prima facie showing, issue an order to show cause." (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 917, review granted Aug. 12, 2020, S263219 (*Tarkington*) [dis. opn. of Lavin, J.].) But other Courts of Appeal have not read the first sentence of subdivision (c) to state the rule and the rest of the sentences to explain the process. Instead, they have read the two references to a prima facie showing in the first and fifth sentences as requiring two different prima facie reviews, with each to occur at a different chronological point in time. Based on this reading, they have further concluded that a petitioner is entitled to counsel during only the second of those reviews.

*Lewis*, a decision by Division One of the Second District Court of Appeal, was the first published decision to address when the right to counsel arises under section 1170.95(c). Based on the sequencing of the subdivisions of section 1170.95, moving from filing a petition under subdivision (a) to resentencing under subdivision (g), *Lewis* determined that "the statutory framework is, overall, chronological." (*Lewis, supra*, 43 Cal.App.5th at pp. 1139–1140.) *Lewis* concluded that it was therefore appropriate to

12

"construe the timing of particular acts in relation to other acts according to their location within the statute; that is, actions described in the statute occur in the order they appear in the text." (*Ibid.*)

Applying this logic to the sentences comprising section 1170.95(c) itself, *Lewis* "construe[d] the requirement to appoint counsel as arising in accordance with the sequence of actions described in [that subdivision]; that is, after the [trial] court determines that the petitioner has made a prima facie showing that [the] petitioner 'falls within the provisions' of the statute, and before the submission of written briefs and the court's determination whether [the] petitioner has made 'a prima facie showing that he or she is entitled to relief.' " (*Lewis, supra,* 43 Cal.App.5th at p. 1140.) Although *Lewis* noted that it was "not clear from the text of subdivision (c) what, if any, substantive differences exist between the 'prima facie showing that the petitioner falls within the provisions of [section 1170.95],' which is referred to in the first sentence of subdivision (c), and the 'prima facie showing that [the petitioner] is entitled to relief,' referred to in the last sentence of the subdivision," it found it unnecessary to resolve the issue because the defendant "was neither within the provisions of the statute, nor entitled to relief, as a matter of law based on the record of conviction." (*Id.* at p. 1140, fn. 10.)

In *Verdugo*, Division Seven of the Second District Court of Appeal attempted a more thorough explanation of the procedure section 1170.95(c) requires after a trial court has received a facially sufficient petition but before it issues an order to show cause. As did *Lewis*, *Verdugo* interpreted the provision to "prescribe[] two additional court reviews before an order to show cause may issue, one made before any briefing to determine whether the petitioner has made a prima facie showing he or she falls within

13

section 1170.95—that is, that the petitioner may be eligible for relief—and a second after briefing by both sides to determine whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 328.) In other words, *Verdugo* interpreted section 1170.95(c) to require "two prima facie showings": first, under the first sentence of the provision, "that the petitioner falls within the provisions of this section," and second, under the last sentence of the provision, that the petitioner "is entitled to relief." (*Verdugo*, at p. 329.) Subsequent decisions have generally adopted *Verdugo*'s description of the process. (E.g., *Tarkington*, *supra*, 49 Cal.App.5th at p. 897; *People v. Edwards* (2020) 48 Cal.App.5th 666, 673–674, review granted July 8, 2020, S262481 (*Edwards*); *People v. Drayton* (2020) 47 Cal.App.5th 965, 975–976 (*Drayton*); *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177–1178, review granted Jun. 24, 2020, S262011.)

*Verdugo* explained its view that the "second prima facie review, made following a round of briefing by the prosecutor and counsel for petitioner, is equivalent to the familiar decisionmaking process before issuance of an order to show cause in habeas corpus proceedings, which typically follows an informal response to the habeas corpus petition by the Attorney General and a reply to the informal response by the petitioner." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 328.) Reasoning that the "first prima facie review" must lie at "the midpoint" between the review for facial sufficiency under section 1170.95, subdivision (b), and the habeas corpus-like "second prima facie review," *Verdugo* determined that the first review under section 1170.95(c) consisted of "a preliminary review of statutory eligibility for resentencing, a concept that is a well-established part of the resentencing process under Propositions 36 and 47. [Citations.] The court's role at this

14

stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner." (*Verdugo*, at p. 329.)

Verdugo ultimately concluded, as did *Lewis* and the other appellate courts to decide the issue, that the right to counsel under section 1170.95(c) does not arise until and unless the trial court is unable to determine at this first stage of review that the petitioner is ineligible for relief as a matter of law. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 332; *Lewis*, *supra*, 43 Cal.App.5th at p. 1140; e.g., *Tarkington*, *supra*, 49 Cal.App.5th at pp. 901–902; *People v. Smith* (2020) 49 Cal.App.5th 85, 92, review granted July 22, 2020, S262835; *People v. Torres*, *supra*, 46 Cal.App.5th at p. 1178; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410.)[7] *Verdugo* explained its view that "[t]he structure and grammar of [section 1170.95(c)] indicate the Legislature intended to create a chronological sequence: first, a prima facie showing; thereafter, appointment of counsel for petitioner; then, briefing by the parties," after which the second prima facie review occurs. (*Verdugo*, at p. 332.) *Verdugo* concluded that it would not "make sense as a practical matter to appoint counsel earlier in the process since counsel's first task is to reply to the prosecutor's response to the petition. If . . . the [trial] court concludes the petitioner has failed to make the initial prima facie showing required by subdivision (c), counsel need not be appointed," and "appointed counsel on appeal can argue the court erred in concluding his or her client was ineligible for relief as a matter of law." (*Id.* at pp. 332–333.)

---

[7] Other decisions in which the right-to-counsel issue is presented have found it unnecessary to decide it. (E.g., *Edwards*, *supra*, 48 Cal.App.5th at p. 675 [any error harmless because petitioner statutorily ineligible for relief].)

15

### 3. Analysis

We decline to adopt the view that section 1170.95(c) requires two prima facie reviews—much less two reviews that are substantively different—and entitles a petitioner to counsel during only the second one. Rather, we read subdivision (c)'s first sentence—"The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section"—as a topic sentence summarizing the trial court's task before issuing an order to show cause, and the following sentences to specify the procedure in undertaking that task. In our view, this conclusion is supported by both the statute's language and its legislative history.

Our analysis begins with accepting that the subdivisions of section 1170.95 generally proceed chronologically vis-à-vis each other (*Lewis*, *supra*, 43 Cal.App.5th at pp. 1139–1140), and that subdivision (c) itself also generally proceeds chronologically. But this hardly requires the conclusion that *every single sentence* of subdivision (c) does so and that the provision's references to a "prima facie showing" in two different places mean there must be two reviews to occur at different times.

To the contrary, neither other subdivisions of section 1170.95 nor subdivision (c) can bear the weight of such an interpretation. The three sentences of subdivision (b)(1), for example, respectively describe, in a clearly non-chronological order, (1) which court the petition must be filed in and whom it must be served on; (2) which judge will rule on the petition; and (3) what information the petition must contain. (*Tarkington*, *supra*, 49 Cal.App.5th at p. 918, fn. 6 [dis. opn. of Lavin, J.].) Needless to say, the petition's contents come before the petition's filing and service. And even the other sentences in subdivision (c) itself are clearly not chronological: The

16

third sentence establishes the deadlines for the parties to "file and serve" their briefs, and the fourth sentence provides that "[t]hese deadlines shall be extended for good cause"—an extension that would be given *before* the briefs were filed and served.

Interpreting section 1170.95(c)'s references to a "prima facie showing" as referring to separate steps results in an anomalous procedure that requires a trial court to perform two different reviews of a facially sufficient petition before issuing an order to show cause:  one to determine whether the petitioner has made a showing that he or she "falls within the provisions of this section," and one to determine whether the petitioner has made a showing that he or she "is entitled to relief."  Finding it determinative that the two quoted phrases contain different words, *Verdugo* decided that "the prebriefing determination whether the petitioner has made a prima facie showing he or she 'falls within the provisions of this section' must . . . be different from the postbriefing prima facie showing the petitioner 'is entitled to relief,' required for issuance of an order to show cause, if only in the nature and extent of materials properly presented to the court in connection with the second prima facie step, or else the two prima facie showings specified in subdivision (c) would be redundant."  (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329.)

The explanation given of the wording difference between the two prima facie reviews is that the first addresses "eligibility" for relief, and the second addresses "entitlement" to relief.  (*Tarkington*, *supra*, 49 Cal.App.5th at p. 902; *Drayton*, *supra*, 47 Cal.App.5th at pp. 975–976; but see *Lewis*, *supra*, 43 Cal.App.5th at p. 1140, fn. 10 ["not clear from the text of subdivision (c) what, if any, substantive differences exist" between the two prima facie showings].)  Under this explanation, the first review requires the trial court

17

to "determine, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief as a matter of law," and the second review requires the court to "take [the] petitioner's factual allegations as true and make a preliminary assessment regarding whether he or she would be entitled to relief if the factual allegations were proved." (*Tarkington*, at p. 898; see also *Drayton*, at pp. 975–976.)

We are not convinced. We accept that, generally speaking, there is a difference between eligibility for relief and entitlement to relief, and we are willing to assume that the phrase "falls within the provisions of this section" refers to eligibility, not entitlement. We also accept the principle that "[w]hen the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning." (*People v. Trevino* (2001) 26 Cal.4th 237, 242.)

But section 1170.95 as a whole does not support the supposition that the Legislature intended to distinguish meaningfully between eligibility for relief and entitlement for relief, because the statute uses these concepts interchangeably in several places. For example, subdivision (d)(3) of section 1170.95 provides, "At the hearing to determine whether the petitioner is *entitled to relief*, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is *ineligible for resentencing*." (§ 1170.95, subd. (d)(3), italics added.) If an order to show cause issues only if a petitioner makes a prima facie showing of *entitlement* to relief, which is something more than *eligibility* for relief, then it makes no sense to return to the concept of eligibility to characterize the prosecution's burden at the hearing.

18

Similarly, under section 1170.95, subdivision (d)(2), "[t]he parties may waive a resentencing hearing and stipulate that the petitioner is *eligible* to have his or her murder conviction vacated and for resentencing." (Italics added.) Again, if an order to show cause does not issue unless a petitioner makes a prima facie showing of *entitlement* to relief, which is something more than *eligibility* for relief, why would a stipulation that the petitioner is merely eligible for relief obviate the need for a hearing on entitlement? Although a statute's use of different wording to refer to similar concepts may sometimes be significant, "where statutes appear to use synonymous words or phrases interchangeably, courts have not hesitated to attribute the same meanings to them." (*Ferra v. Loews Hollywood Hotel, LLC* (2019) 40 Cal.App.5th 1239, 1266, review granted Jan. 22, 2020, S259172 [collecting cases].) Here, section 1170.95's interchangeable references to eligibility and entitlement repudiate the notion that the concepts have different meanings.

The legislative history of Senate Bill No. 1437 also supports the conclusion that the Legislature used the concepts of eligibility and entitlement interchangeably. The first two versions of the bill would have required the parties to brief, within 60 days of receiving notice that a petition was filed, whether the petitioner was "entitled to relief," and the trial court to hold a resentencing hearing if it found "sufficient evidence that the petitioner falls within the provisions of this section." (Sen. Bill No. 1437, as introduced Feb. 16, 2018, § 6; *id.*, as amended May 25, 2018, § 6.) The *Tarkington* majority marshaled this aspect of the bill's evolution to claim that "defense counsel and the prosecutor were always intended to brief *only* the question of the petitioner's *entitlement* to relief; the court was to determine *eligibility*— whether the petitioner 'falls within the provisions of this section'—on its own, without briefing on the question from the parties." (*Tarkington, supra,*

49 Cal.App.5th at p. 903.) But the decision does not explain why it would make sense to require the parties to brief whether the petitioner met the greater burden before the court determined whether he or she met the lesser burden.

This brings us to another text-based reason for not reading section 1170.95(c) to establish two prima facie reviews: The briefing deadlines the provision establishes run from "service of the petition," not from any action by the trial court. As the *Tarkington* dissent insightfully observed, "[I]f the Legislature had anticipated that the court would undertake its own review of the merits of the petition as an intermediate step before appointing counsel, it would have calculated the deadlines not from the date of service of the petition but instead from the date the court completed its initial review. And though the Legislature required the prosecution to respond within 60 days of being served with the petition, it did not create a deadline for the court to conduct an intermediate review. Nor is there any provision allowing the court to relieve the parties of these statutory requirements. [Fn. omitted.] [¶] By omitting those steps, the Legislature signaled it did not intend for the court and prosecutors to duplicate their efforts by conducting the same review of the same documents at the same time." (*Tarkington, supra*, 49 Cal.App.5th at p. 920 [dis. opn. of Lavin, J.].)[8]

---

[8] We are perplexed by the *Tarkington* majority's response that the Legislature intended to ensure "that the superior court will promptly rule on eligibility"—i.e., perform its first prima facie review—by "running the briefing period from the date of the petition's filing." (*Tarkington, supra*, 49 Cal.App.5th at p. 904, fn. 9.) If the Legislature intended an initial prima facie review before the parties submitted briefing, surely a better way to ensure that a trial court conducted it promptly would be to impose a deadline on the court, not the prosecution. In fact, the court is not subject to any explicit deadline until it issues an order to show cause, at which point it must hold an evidentiary hearing within 60 days. (§ 1170.95, subd. (d)(1).)

This point also undercuts the asserted policy-based justification for the prevailing interpretation of section 1170.95(c): that " '[i]t would be a gross misuse of judicial resources to require the issuance of an order to show cause or even appointment of counsel based solely on the allegations of the petition, which frequently are erroneous, when even a cursory review of the court file would show as a matter of law that the petitioner is not eligible for relief.' " (*Lewis*, *supra*, 43 Cal.App.5th at p. 1138; accord *Tarkington*, *supra*, 49 Cal.App.5th at p. 901; *Edwards*, *supra*, 48 Cal.App.5th at p. 674; *People v. Law* (2020) 48 Cal.App.5th 811, 821, review granted July 8, 2020, S262490.) But, in fact, it does *not* conserve judicial resources to require trial courts to undertake a preliminary review of the record of conviction—which may not even be readily available—and to draw legal conclusions from this review without input from counsel, when prosecutors are simultaneously doing the same thing to comply with the statute and respond to petitions within 60 days. It seems to us that a court can more efficiently and effectively weed out unmeritorious petitions after the prosecutor has weighed in. And if the petition is clearly without merit, the prosecution will presumably say so.

*Verdugo* concluded that Senate Bill No. 1437's legislative history reveals "the Legislature's intent that the superior court perform a substantive gatekeeping function, screening out clearly ineligible petitioners before devoting additional resources to the resentencing process." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 331.) In reaching this conclusion, *Verdugo* misread subdivision (c) to provide that "if the petitioner's ineligibility for resentencing under section 1170.95 is not established as a matter of law by the record of conviction, the court must direct the prosecutor to file a response to the petition." (*Verdugo*, at p. 330.) But section 1170.95(c) expressly requires that a prosecutor "*shall* file and serve a response within 60

21

days of service of the petition," without the need for any action by the trial court. (§ 1170.95(c), italics added.) Thus, the statute contradicts the idea that a prosecutor need not respond to a petition until the court requests a response, preserving the risk of duplicative efforts if the two-reviews framework is followed.

The legislative evolution of section 1170.95 demonstrates, if anything, an increasing reluctance by the Legislature to impose on trial courts the responsibility to perform an initial substantive review. The original version of Senate Bill No. 1437 would have required a court to, upon receiving a petition, "request all of the following: [¶] (1) A copy of the charging documents from the superior court in which the case was prosecuted. [¶] (2) The abstract of judgment. [¶] (3) The reporter's transcript of the plea, if applicable, and the sentencing transcript. [¶] (4) The verdict forms, if a trial was held. [¶] (5) Any other information the court finds relevant to its decision, including information related to the charging, conviction, and sentencing of the petitioner's codefendants in the trial court." (Sen. Bill No. 1437, as introduced Feb. 16, 2018, § 6.) It would have also required a court, upon receiving a petition, to give notice to the parties and "*request* that a response be filed from both parties," responses that were not subject to any set statutory deadlines. (*Ibid.*, italics added.) The second version of the bill eliminated the requirement that a court procure documents from the record of conviction, and it also made the parties' responses mandatory within 60 days of receiving the court's notice. (Sen. Bill No. 1437, as amended May 25, 2018, § 6.) Finally, as we have indicated, the third and final version made the prosecutor's response mandatory and due 60 days after the petition's filing, and the petitioner's reply optional and due 30 days after the prosecutor's response. (§ 1170.95(c).) Taken as a whole, these changes

strongly suggest that the Legislature intended for the prosecutor, not the court, to take the lead in identifying which petitioners are not entitled to relief as a matter of law based on the record of conviction.[9]

In short, we part ways with the decisions interpreting section 1170.95(c) to require two prima facie reviews with the right to counsel attaching only at the second stage of review, and hold that a petitioner is entitled to counsel upon the filing of a facially sufficient petition for relief that requests counsel be appointed.

### B. *The Trial Court's Failure to Appoint Counsel for Cooper Was Prejudicial.*

We next turn to consider whether the trial court's failure to appoint counsel for Cooper requires reversal. We conclude that it does.

Initially, we reject Cooper's cursory assertion that "[t]he failure to appoint counsel at a critical stage of the proceedings requires reversal of the resulting judgment without regard to any harmless error analysis." (See *Edwards*, *supra*, 48 Cal.App.5th at p. 675 [failure to appoint counsel susceptible to harmless-error analysis]; see also *Tarkington*, *supra*, 49 Cal.App.5th at p. 910.) Still, we need not resolve whether the federal or state standard of prejudice applies, because the failure to appoint counsel was prejudicial under both of them. Since the record does not conclusively demonstrate that Cooper was ineligible for relief as a matter of law, we

---

[9] Putting the initial onus on a prosecutor to investigate whether the record conclusively demonstrates the petitioner's ineligibility for relief such that an order to show cause should not issue is also consistent with section 1170.95, subdivision (d)(3). Under that provision, once an order to show cause issues, the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is ineligible for relief. This is in contrast to habeas proceedings, in which the ultimate burden of proof is on the petitioner to demonstrate entitlement to relief by a preponderance of the evidence. (*In re Gay* (2020) 8 Cal.5th 1059, 1072.)

cannot say that the error was harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24), and it is reasonably probable that if Cooper had been afforded assistance of counsel his petition would not have been summarily denied without an evidentiary hearing.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

To begin with, we agree with Cooper that the trial court improperly relied on the transcript of the preliminary hearing to conclude that he was ineligible for relief as a matter of law.  "[A]t the preliminary hearing, the magistrate is called upon only to determine whether the factual showing is sufficient to establish probable cause to believe the defendant committed a felony," a "fundamentally different factual determination[]" than the determination at trial of guilt beyond a reasonable doubt.  (*People v. DeJesus* (1995) 38 Cal.App.4th 1, 14.)  So long as "there is such a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused[,] . . . the magistrate *must* hold the defendant to answer."  (*Id.* at p. 15.)  Thus, "it is generally not necessary that [the magistrate] resolve all possible conflicts in the evidence and issues of credibility.  [Citation.]  Indeed, to the contrary, as a practical matter, there will rarely be conflicts to resolve," since "[n]ormally, neither defense witnesses are called nor affirmative defenses actually litigated."  (*Ibid.*)  " 'In short, *the magistrate is not a trier of fact*,' " and a ruling holding a defendant to answer is in no way equivalent to a jury's factual finding or a defendant's admission.  (*Ibid.*; see *Drayton, supra,* 47 Cal.App.5th at pp. 981–982.)

Consistent with these principles, *Drayton* held that the trial court improperly denied the defendant's section 1170.95(c) petition by finding, based upon evidence from the preliminary hearing, that the defendant could

24

still be convicted of felony murder after Senate Bill No. 1437 because he was a major participant in the underlying felony who acted with reckless indifference to human life. (*Drayton*, *supra*, 47 Cal.App.5th at pp. 981–982; see § 189, subd. (e)(3).) Pointing out that this determination "necessarily requires the weighing of facts and drawing inferences," *Drayton* concluded that "the trial court should not have engaged in this factfinding without first issuing an order to show cause and allowing the parties to present evidence at a hearing, as described in section 1170.95, subdivision (d)." (*Drayton*, at p. 982, fn. omitted.)

For similar reasons, we conclude that the trial court here erred by relying on the transcript of the preliminary hearing to deny Cooper's petition without first receiving briefing from the parties. Refusing to "split hairs over who is more culpable on these facts," the court did not identify which of the three surviving bases under section 189 for a felony-murder conviction— being the actual killer under subdivision (e)(1), aiding and abetting the murder with an intent to kill under subdivision (e)(2), or being a major participant in the underlying felony who acted with reckless disregard for human life under subdivision (e)(3)—it found to apply. And it did not even address the natural and probable consequences doctrine. As in *Drayton*, and particularly given the lack of clarity as to what Cooper's and Mitchell's respective roles were in Whitten's killing, the court's determination that Cooper could still be convicted of murder after Senate Bill No. 1437 necessarily required factfinding.

The Attorney General agrees that "[t]o the extent that the trial court weighed evidence in its finding of no prima facie case, that could not justify dismissal of the petition at the prima facie stages 'as a matter of law,'" and disclaims reliance "on the trial court's findings in that regard as a basis for

25

affirming its judgment." But he urges us to conclude that any error was harmless on the alternate basis that "the record of conviction indisputably shows . . . that [Cooper's] plea to second degree murder was based on a theory of malice murder." Specifically, the Attorney General argues, "The trial court was obviously aware that the information alleged that [Cooper] personally used a deadly weapon and committed great bodily injury against the victim, as well as [Cooper's] plea to the relevant charge, and his request to be described as an aider and abettor, meant he was not 'entitled to relief' . . . . Thus, even if [the court] was required to appoint counsel, the record of conviction would have inexorably led [it] to dismiss the petition after briefing."

We do not agree that these circumstances establish harmlessness. The information's enhancement allegations are relevant to the requirement for relief that "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine." (§ 1170.95, subd. (a)(1).) We do not see how the allegation that Cooper personally used a cinder block or the allegation that he inflicted great bodily injury on Whitten prevented the prosecution from trying him on a theory of felony murder or natural and probable consequences (see § 1170.95, subd. (a)(1)), much less how these unadmitted allegations nevertheless establish his plea was to murder with malice aforethought or, as the Attorney General says, that he "admitted to acting with the intent to kill." Indeed, even if the allegations had been found true instead of being dismissed, the Attorney General does not explain how they would necessarily establish that Cooper was ineligible for relief—at least given that Mitchell also attacked Whitten. (See, e.g., *People v. Offley* (2020) 48 Cal.App.5th 588, 593, 598

26

[finding that defendant personally and intentionally discharged firearm causing victim's death did not preclude relief under section 1170.95 as a matter of law].)

Nor do we think it significant that there was mention at the plea hearing of the prosecutor's promise to "write in his letter to the Board of Prison Terms that the evidence supports the theory that [Cooper] is not a direct actor here but an aider and abettor." There is little context for this statement in the record before us, and such stray comments hardly constitute Cooper's admission to being the actual killer, acting with an intent to kill, or anything else that would render him ineligible for relief under section 1170.95 as a matter of law.

Our opinion should not be read to suggest that, had the trial court appointed counsel for Cooper and received briefing from the parties, it could not then rely on the preliminary-hearing transcript to deny the petition for failure to make a prima facie showing of entitlement to relief. We need not decide whether the court could have properly denied the petition based on the existing record if, for example, Cooper was appointed counsel but did not exercise the opportunity to file a brief. Even if we assume that it was proper not to issue an order to show cause on the existing record, the error in failing to appoint counsel is prejudicial because it prevented Cooper from further developing the record to demonstrate potential entitlement to relief.

The order denying relief highlights this prejudice because it faulted Cooper for submitting a form petition that did not "present any facts, address the factual basis for his plea, or address the evidence elicited during the preliminary hearing." Nothing in section 1170.95, however, supports the notion that a petitioner must proffer such information *before* counsel is appointed. Rather, as we have explained, section 1170.95(c) establishes a

27

procedure under which a petitioner is appointed counsel upon filing a facially sufficient petition that requests counsel.  Without the assistance of counsel, prisoners seeking relief under section 1170.95 are unlikely to be in a position to marshal the type of evidence and arguments that the court apparently expected from Cooper.

## III.
### DISPOSITION

The order denying Cooper's petition is reversed, and the matter is remanded for the trial court to appoint counsel for Cooper and conduct further proceedings under section 1170.95 consistent with this opinion.

_____

Humes, P.J.

WE CONCUR:

_____

Margulies, J.

_____

Banke, J.

*People v. Cooper*  A156880

Trial Court:

      Superior Court of the County of Alameda


Trial Judge:

      Hon. Morris Jacobson


Counsel for Defendant and Appellant:

      Eric S. Multhap, under appointment by the Court of Appeal


Counsel for Plaintiff and Respondent:

      Xavier Becerra, Attorney General

      Lance E. Winters, Chief Assistant Attorney General

      Jeffrey M. Laurence, Senior Assistant Attorney General

      Rene Chacon, Supervising Deputy Attorney General

      Juliet B. Haley, Deputy Attorney General

*People v. Cooper*  A156880